808 So.2d 1030 (2001)
Ex parte ANONYMOUS, a minor.
In the matter of Anonymous, a minor.
1001649.
Supreme Court of Alabama.
July 5, 2001.

*1031 On Submission of Findings

PER CURIAM.
An unemancipated minor petitioned this Court to review the judgment of the Court of Civil Appeals affirming the trial court's denial of the minor's petition for a waiver of parental consent to an abortion. In re Anonymous, 808 So.2d 1024 (Ala.Civ.App. 2001). This Court reversed the judgment of the Court of Civil Appeals and remanded the cause to that court with instructions that it remand the case to the trial court for the trial court to supplement its findings. Because time was of the essence, the trial court was instructed to submit its findings, as supplemented, to this Court. Ex parte Anonymous, 808 So.2d 1025 (Ala. 2001). The trial court has now submitted its supplemental findings.
The record in this case reflects that the minor is 16 years old. She is a sophomore in high school; her grades are Bs and Cs. She is presently not employed and has never been employed. She says that she plans to attend college. At the time of the hearing on her petition she was six to seven weeks pregnant. The minor testified that the baby's father, who is 18 years old, has completed his freshman year of college. She further testified that she has not informed him of her pregnancy.
The minor's parents are divorced, and she resides with her father, who has sole custody. She testified that she has a good relationship with her father and that she has virtually no relationship with her mother.
*1032 She testified that her father is a devout Catholic who is opposed to abortion. She further testified that she believed her father would "freak out" if she told him of her pregnancy. She stated that she believed if he found out about her pregnancy he would send her to stay with one of her relatives and that he would want her to carry the baby to term and then place the baby for adoption. She believed this would be his response because she had an older sister who had become pregnant; she said her father had planned to have her older sister live with relatives out-of-state until the baby was born and then the baby was to be placed for adoption. The sister, however, miscarried before the plan could be implemented. The minor stated that she decided to proceed with a judicial-bypass action rather than ask her father to consent to her having an abortion because she had gone to a clinic operated by Planned Parenthood and the people there had talked to her about the abortion and told her that she could get a "judicial-bypass termination."
The minor testified that she had discussed abortion with a number of friends her age and with a 25-year-old male friend. The minor testified that a woman who worked at the Planned Parenthood clinic had informed her about the abortion procedure and the alternatives to abortion.
When the hearing on her petition began, the minor had not discussed the matter with a physician. At the request of the minor's counsel, the hearing was recessed. When the hearing reconvened four days later, the minor had spoken to her long-time pediatrician. She had discussed with the pediatrician the alternatives to abortion. She testified that she understood that she could give the baby up for adoption, keep it herself, or have an abortion. She had discussed with her pediatrician whether she was physically able to have an abortion. When asked whether she and the doctor discussed any physical problems that would pose a danger to her if she had an abortion, she responded that the doctor had said that she would not have any problem or that more than likely she would not have any.
The minor had scheduled an appointment to discuss the abortion procedure with the doctor who was to perform the abortion. However, when the minor was told that she would have to wait at the clinic for a short time before she could see the doctor, she left the clinic.
The minor has received no counseling concerning the psychological impact of undergoing an abortion. She states that she has read a pamphlet from Planned Parenthood that states "[M]any women are relieved after an abortion" and that even though "some are sad after killing their baby, they recover quickly."
When asked to describe her understanding of the abortion procedure, she stated:
"[T]hey shoot you in the cervix where it's like a pain reliever and they open you up. And it's called a vacuum aspiration and it lasts like two to three minutes. And that clears up all the pregnant tissue. And then after that they'll go back and see if they got all of the pregnant tissue. And then you go to a recovery room and be under observation for thirty minutes or so. And if they feel like you're ready to go, they'll send you home."
She also stated that she understood that about three weeks after the abortion the patient goes in for a follow-up visit. She stated that the risks of the procedure are hemorrhaging, damage to the uterus, infertility, and death.
When asked if she had considered the alternatives and had reached a decision she stated: "I would like to have an abortion *1033 but if not then I'd give the baby up for adoption." When the trial judge asked her why she chose abortion as her first option, she responded, "Because I want to finish school. I feel like my dad would send me to live with a relative."
The trial court's supplemental findings read, in pertinent part:
"In [this court], a form order for a Denial of Waiver of Consent Order is used. The orders are often handwritten due to the time constraints involved in this type of case. Inadvertently, this judge underlined a phrase in that form which caused confusion in the appellate court. This judge regrets this marking and submits that it was done while reading the findings of the printed form for accuracy. This judge intended that both prongs of the necessary findings in a denial of a waiver of parental consent petition were found to be present in this case.
"In this case, a hearing on the petition began on May 25, 2001. During the testimony of the petitioner, counsel for the petitioner requested a recess, as the petitioner apparently had not talked to the physician regarding her abortion procedure. On May 29, 2001, the hearing resumed and the testimony was completed. The petitioner testified that during the three-day recess she did not consult with the physician who would perform her abortion procedure. She had the opportunity to do so and left the clinic before talking to the doctor. There was no explanation of why the petitioner left the clinic before consulting with the doctor, but she had the opportunity to inform herself fully on the medical procedure used by the physician in her case. She did not take advantage of that opportunity.
"However, the petitioner did discuss abortion with her pediatrician. As the pediatrician was not the physician performing the procedure and was in a different field of medicine, this Court did not believe this was sufficient to inform petitioner regarding her particular procedure.
"Second, this Court had concerns about the petitioner's lack of any knowledge about the possible long-term psychological effects of abortion. This petitioner was not informed about the possibility of negative long-term effects. Petitioner referred to the procedure as `killing the child.' She did not seem to be aware or concerned that there could be any negative consequences.
"The findings of this Court regarding the petitioner in the original order remain unchanged.
"Additionally, petitioner was a well-groomed teenager with a flat demeanor. She was not silly or laughing nor was she self-assured and decisive. Overall, this judge had concerns regarding the petitioner's maturity due to her failure to avail herself of available medical advice and her lack of any knowledge or insight into the possible psychological effects of her choice in this matter.
"Therefore, this Court respectfully submits the foregoing in reply to the remand in this matter and restates that the denial of the petition in this matter was based on the findings in the original form whether or not they were underlined."
Applying the ore tenus rule, as we are required to do by Ex parte Anonymous, 803 So.2d 542 (Ala.2001), this Court affords the trial court's findings considerable deference and will reverse the trial court's judgment only when that judgment is "plainly erroneous or manifestly unjust." The trial court's responsibility in this case was to determine whether the minor is mature and well-informed enough about *1034 the abortion procedure to make an independent decision to undergo an abortion without parental consent or whether an abortion would be in the minor's best interest. See § 26-21-4(f), Ala.Code 1975.
In this case the trial court denied the request for a waiver, finding that the minor was not sufficiently mature to make such a decision without consulting her parent or legal guardian and that the performance of an abortion is not in the minor's best interest. See In re Anonymous, 805 So.2d 726, 728 (Ala.Civ.App.2001). Our review of the cold appellate record indicates that this conclusion is correct. The trial court had the opportunity to observe the minor and consider her demeanor as she testified. The trial court is in a far better position than is this Court to determine as a matter of fact the minor's maturity and level of knowledge. The trial court's findings after hearing the minor and observing her demeanor as she testified bolster our conclusion.
We conclude that the trial court's judgment is correct; it is not plainly erroneous or manifestly unjust. Therefore, we deny the petition.
PETITION DENIED.
LYONS and STUART, JJ., concur.
MOORE, C.J., and SEE and BROWN, JJ., concur specially.
HOUSTON and HARWOOD, JJ., concur in the result.
JOHNSTONE and WOODALL, JJ., dissent.
MOORE, Chief Justice (concurring specially).
The petitioner asks us to reverse the judgments of the trial court and the Court of Civil Appeals and to grant her petition. She argues that Alabama courts have in-correctly construed controlling precedent on the issue of the application of the ore tenus rule in waiver-of-parental-consent cases. We have previously rejected this argument, and we again reject it here. See Ex parte Anonymous, 806 So.2d 1269 (Ala.2001); Ex parte Anonymous, 803 So.2d 542 (Ala.2001).
The petitioner also argues that, as a matter of federal constitutional law, this Court must independently review the merits of her petition, without deferring to either the trial court's factual conclusions or its assessment of the witnesses' demeanor. In support of her contention, the petitioner cites Bose Corp. v. Consumers Union of the United States, Inc., 466 U.S. 485, 509, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), and Cox v. Louisiana, 379 U.S. 536, 545, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). In those cases, the United States Supreme Court reaffirmed the broad principle that when an action raises constitutional claims, appellate courts must independently review the facts in the case, generally without deferring to the trial court's factual determinations. Bose, 466 U.S. at 514, 104 S.Ct. 1949.
However, such an independent appellate review is not required in all proceedings in which constitutional claims are raised. For example, criminal cases frequently include claims of constitutional violations. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment forbids a prosecutor from using peremptory challenges to exclude African Americans from jury service because of their race. In Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the defendant, citing Bose, supra, argued that a prosecutor in exercising his peremptory *1035 strikes had violated the defendant's constitutional rights and the principle of Batson; he maintained that the United States Supreme Court was obligated to perform an "independent appellate review." The United States Supreme Court distinguished Bose and refused to apply the independent-appellate-review standard, despite the clear involvement of constitutional rights.
"The reasons justifying a deferential standard of review in other contexts, however, apply with equal force to our review of a state trial court's findings of fact made in connection with a federal constitutional claim. Our cases have indicated that, in the absence of exceptional circumstances, we would defer to state-court factual findings, even when those findings relate to a constitutional issue."
Hernandez, 500 U.S. at 366, 111 S.Ct. 1859 (emphasis added). See Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Authority, 767 F.2d 1225, 1229 (7th Cir.1985) ("However, the presence of a First Amendment issue in a case does not, in and of itself, trigger the rule of independent review of the factual findings of the lower court."); City of Rome v. United States, 446 U.S. 156, 183, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980)(question whether electoral-district structure had discriminatory effect in diluting minority vote is a question of fact subject to "clearly erroneous" standard of review). Thus, an appellate court does not engage in independent appellate review merely because a case allegedly infringes on a constitutional right. The pertinent inquiry then, is whether the appellate court should conduct an independent review in judicial-bypass cases.
I note at the outset that the petitioner has not cited any case where the courts have conducted an independent appellate reviewgiving little or no deference to the trial court's findingsin the context of abortion, parental consent or notification, or judicial-bypass proceedings. In fact, noting the unusual posture of judicial-bypass proceedings, the United States Supreme Court, in Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990), specifically allowed a heightened standard of proof. "A State, moreover, may require a heightened standard of proof when, as here, the bypass procedure contemplates an ex parte proceeding at which no one opposes the minor's testimony." 497 U.S. at 516, 110 S.Ct. 2972.
Recently, we emphasized the unusual and unilateral nature of judicial-bypass proceedings as one reason for applying the ore tenus standard of review in these cases:
"[A] hearing on a petition for a waiver of parental consent is not only non-adversarial in nature, it specifically denies those persons who arguably are interested in the outcomei.e., the minor's parents and other family membersthe right to appear and be heard. Moreover, the mandated secrecy of the hearing prevents anyone, at least in theory, from opposing the minor.
"Alabama courts have previously noted the inherent difficulties and dangers of rendering opinions in such unilateral proceedings:
"`However, this procedure is not without difficulty in that the opportunity is not generally available for opposing views to present their respective positions, nor are pertinent facts presented as is usual in the adversary nature of our judicial system. The Supreme Court's primary function is one of appellate review, exercised in the context of adversary proceedings. The very nature of our judicial process *1036 mandates that decisions be rendered only after all sides have presented their respective views....'
Opinion of the Justices No. 280, 417 So.2d 936, 936 (Ala.1981).
"In these types of cases, the usual vigorous and competing advocacy, which typically makes the adversary system an effective means for discovering the truth, is conspicuously absent. As a result, the need for a perceptive, intuitive, and discerning trial judge, as well as his or her specific factual findings, is arguably more necessary than in other cases where opposing advocacy ultimately reveals the facts."
Ex parte Anonymous, 806 So.2d at 1276.[1]
Furthermore, those cases in which an independent appellate review has been undertaken are distinguishable from this case. First, those cases involved questions of law as opposed to questions of fact. Hernandez, 500 U.S. at 367, 111 S.Ct. 1859 ("whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law"). Likewise, in Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), the United States Supreme Court rejected the State of Georgia's contention that whether a film was obscene was a question of fact for the jury's determination, and that its determination should not be disturbed, absent clear error. Rather, the United States Supreme Court ruled that, as a matter of constitutional law, the film could not be found to be obscene. 418 U.S. at 161, 94 S.Ct. 2750.
Here, however, we are faced not with questions of law, but rather questions of fact. Ex parte Anonymous, 806 So.2d at 1273. See Indiana Planned Parenthood Affiliates Ass'n, Inc. v. Pearson, 716 F.2d 1127, 1136 (7th Cir.1983) ("[T]he determination of maturity is largely an issue of fact...."); In re Doe, 19 S.W.3d 249, 253 (Tex.2000) ("This requirement [that the petitioner be mature and sufficiently well-informed] implies that the trial judge is to weigh the evidence and determine the credibility of the minor or any other witnesses. These are typical fact-finding functions, performed by a trial court only after hearing the minor's live testimony and viewing her demeanor."); Schotz v. Oliver, 361 So.2d 605, 607 (Ala.Civ.App. 1978) ("[T]he question of what is or is not in `the best interests of the child' is a question of fact...."); Pace v. Pace, 22 P.3d 861, 865 (Wyo.2001) ("The determination of the best interests of the child is a question for the trier of fact. `We do not *1037 overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.'"); In re Doe, 89 Haw. 477, 487, 974 P.2d 1067, 1077 (Ct. App.1999) (the decision of what is in the "best interests of a child is a matter or question of ultimate fact reviewable under the clearly erroneous standard of review").
The United States Supreme Court has referred to the questions raised in judicial-bypass cases as questions of fact. "The principal opinion in Bellotti [v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979)] indicates that a State may require the minor to prove these facts in a bypass procedure." Ohio v. Akron Center for Reproductive Health, 497 U.S. at 515-16, 110 S.Ct. 2972 (emphasis added.)[2] Second, independent appellate review is typically associated with cases involving obscenity and child pornography, e.g., Jenkins, supra, and Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and cases involving defamation and cases in which words have incited anger or violence. Bose, supra, and Cox, supra. In these types of cases, appellate courts are generally not at a disadvantage in conducting an independent review, because an appellate court can review words, pictures, or films as easily as, and in the same context as, a trial court.
In Cox, supra, a person speaking in public was arrested and convicted of disturbing the peace; he had merely told students to stage peaceful "sit-ins" at local segregated lunch counters. 379 U.S. at 545, 85 S.Ct. 453. Because the speaker's statements were part of the record, the trial court was not in a better position than an appellate court to determine if the statement constituted a breach of the peace. The appellate court could evaluate the speaker's statement as well as the trial court.
In Jenkins, supra, the United States Supreme Court applied an independent review to determine whether a film was obscene. The Court noted: "We held in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), decided on the same day, that expert testimony as to obscenity is not necessary when the films at issue are themselves placed in evidence." Jenkins, 418 U.S. at 159-60, 94 S.Ct. 2750 (emphasis added). Again, the fact that the film was part of the record allowed the appellate court to review the evidence in the same manner as would the trial court.[3] The Court ultimately concluded that the film could not, as a matter of law, be held to be obscene because "we [the United States Supreme Court] made it plain that ... `no one will be subject to prosecution' for the sale or exposure of obscene materials unless these materials depict or describe patently offensive `hard core' sexual conduct...." Jenkins, 418 U.S. at 160, 94 S.Ct. 2750. Because the Court reviewed the material firsthand, and saw, firsthand, that it did not contain "hard core" sexual conduct, it could not be classified as obscene as a matter of law.
Here, we are confronted with a situation where our review is the not same as that applied by the appellate court in Cox or in Jenkins. Neither is our review the same as the trial court's.

*1038 "In making such a difficult determination, a trial judge, observing the testimony, may draw inferences from the minor's composure, analytic ability, appearance, thoughtfulness, tone of voice, expressions, and her ability to articulate her reasoning and conclusions. In fact, no list of the inquiries or considerations pertinent to an assessment of maturity could purport to be exhaustive. Moreover, conclusions drawn from these observations must be carefully weighed in light of the minor's history, including her educational background and her socioeconomic status. `[T]he fact that a minor may be very much an adult in some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended.' Bellotti [v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979)], 443 U.S. at 644[, 99 S.Ct. 3035]. Needless to say, many of the factors necessary for a trial court to make a determination of a petitioner's maturity do not readily transfer to the record for our consideration. The United States Supreme Court has concluded that `the peculiar nature of the abortion decision requires the opportunity for case-by-case evaluations of the maturity of pregnant minors.' Id. at 644[, 99 S.Ct. 3035]. Such case-by-case evaluations are best made by the trial court."
Ex parte Anonymous, 806 So.2d at 1274.[4] Unlike the appellate courts in Cox, Bose, and Jenkins, we cannot personally review the subject of the controversy, nor do we have the advantages noted in Ex parte Anonymous that a trial judge has.
In fact, when viewed in context, the constitutionally based rule of independent appellate review does not differ significantly from the normal rules guiding our appellate review.
"The conflict between the two rules is in some respects more apparent than real. The New York Times [v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] rule emphasizes the need for an appellate court to make an independent examination of the entire record; Rule 52(a) [Fed.R.App.P., governing the standard of appellate review] never forbids such an examination, and indeed our seminal decision on the Rule expressly contemplated a review of the entire record, stating that a `finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' Moreover, Rule 52(a) commands that `due regard' shall be given to the trial judge's opportunity to observe the demeanor of the witnesses; the constitutionally-based *1039 rule of independent review permits this opportunity to be given its due. Indeed, as we previously observed, the Court of Appeals in this case expressly declined to second-guess the District Judge on the credibility of the witnesses."
Bose, 466 U.S. at 499-500, 104 S.Ct. 1949 (emphasis added) (citations omitted).
"As a general matter, we think the Norris line of cases [implementing independent appellate review] reconcilable with this clear error standard of review. In those cases, the evidence was such that a `reviewing court on the entire evidence [would be] left with the definite and firm conviction that a mistake ha[d] been committed.' ... In circumstances such as those, a finding of no discrimination was simply too incredible to be accepted by this Court."
Hernandez, 500 U.S. at 369, 111 S.Ct. 1859 (first bracketed language added; citations omitted). In other words, in those cases, the trial courts' conclusions were plainly and palpably wrong.
We are always required to review the record to determine what quantum of evidence supports that trial court's judgment. Moreover, if the trial court's ruling is plainly wrong, as it was in Jenkins, supra, and Cox, supra, we must overturn the trial court's ruling. When viewed in this context, it is easy to see why the United States Supreme Court has said that "[t]he conflict between the two rules [the rule of independent appellate review and the ore tenus rule] is in some respects more apparent than real," Bose, 466 U.S. at 499, 104 S.Ct. 1949, and that "the Norris line of cases [implementing independent appellate review] [is] reconcilable with th[e] clear error standard of review." Hernandez, 500 U.S. at 369, 111 S.Ct. 1859.
Moreover, we are guided by this Court's prior ruling on the application of the independent-appellate-review standard, albeit in the context of defamation cases. In Pemberton v. Birmingham News Co., 482 So.2d 257, 260 (Ala.1985), this Court stated that federal constitutional law required an independent appellate review of the facts to determine whether the evidence of actual malice presented in a defamation case was clear and convincing. We, however, continued: "This does not mean, however, that we ignore the jury verdict. It is entitled to some weight, especially on matters involving the credibility of witnesses." Id. Other courts considering this issue have reached similar results.
"Many of these cases, following Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935), have emphasized this Court's duty to `analyze the facts in order that the appropriate enforcement of the federal right may be assured,' or to `make independent inquiry and determination of the disputed facts.' The review provided for in those cases, however, leaves room for deference to state-court factual determinations, in particular on issues of credibility."
Hernandez, 500 U.S. at 367-68, 111 S.Ct. 1859 (emphasis added; citations omitted).
"While our duty, in reviewing a conviction upon a complaint that the procedure through which it was obtained violates due process and equal protection under the Fourteenth Amendment, calls for our examination of evidence to determine for ourselves whether a federal constitutional right has been denied, expressly or in substance and effect, we accord in that examination great respect to the conclusions of the state judiciary. That respect leads us to accept the conclusion of the trier on disputed issues `unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process,' or equal protection."
*1040 Akins v. Texas, 325 U.S. 398, 401-02, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945) (citations omitted).
"Thus, we hold that an appellate court in Virginia, on the issue of punitive damages or where New York Times malice must be proven, must independently decide whether the evidence in the record on appeal is sufficient to support a finding of New York Times `actual malice' by clear and convincing proof. This does not mean that the reviewing court may disregard the determinations made on credibility of witnesses by the trier of fact or that the presumption of correctness that attaches to factual findings is to be discounted. The rule simply means that appellate judges in such a case must examine the facts pertinent to the punitive-damage[s] award and exercise independent judgment to `determine whether the record establishes actual malice with convincing clarity.'"
Gazette, Inc. v. Harris, 229 Va. 1, 19-20, 325 S.E.2d 713, 727-28 (Va.1985) (emphasis added; citations omitted). "Even where a question of fact may have constitutional significance, we normally accord findings of state courts deference in reviewing constitutional claims here." Time, Inc. v. Firestone, 424 U.S. 448, 463, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976).
"The federal question presented is whether the second confession was given under such circumstances that its use as evidence at the trial constitutes a violation of the due process clause of the Fourteenth Amendment....
". . . .
"... But where there is a dispute as to whether the acts which are charged to be coercive actually occurred, or where different inferences may fairly be drawn from admitted facts, the trial judge and the jury are not only in a better position to appraise the truth or falsity of the defendant's assertions from the demeanor of the witnesses but the legal duty is upon them to make the decision."
Lyons v. Oklahoma, 322 U.S. 596, 601-02, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944).
"Of course, in constitutional cases, we have power to examine the whole record to arrive at an independent judgment as to whether constitutional rights have been invaded, but that does not mean that we will re-examine, as a court of first instance, findings of fact supported by substantial evidence."
Norton Co. v. Department of Revenue of Illinois, 340 U.S. 534, 538, 71 S.Ct. 377, 95 L.Ed. 517 (1951) (footnote omitted).
None of the cases cited by the petitioner that advocate independent appellate review requires a purely factual determination, let alone a determination of maturity and best interest, a determination the United States Supreme Court has said requires a "case-by-case evaluation." Here, after reviewing the record, I am not left with a definite and firm conviction that a mistake has been made. Neither are the trial court's findings "simply too incredible to be accepted by this Court." Stated another way, the trial court's findings are supported by the evidence in the record.
The United States Supreme Court has also stated that it is "difficult to define, let alone determine, maturity...." Bellotti v. Baird, 443 U.S. 622, 644 n. 23, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). The trial court is most decidedly in the best position to determine the facts in a case such as this one. After reviewing the record, which I am obliged to do in every case, I conclude that the trial court's judgment is supported by the evidence and that its ruling should not be disturbed.
SEE and BROWN, JJ., concur.
*1041 JOHNSTONE, Justice (dissenting).
My observations about the errors of the trial court and of this Court as stated in my original special writing when the majority remanded this case, are as true now as they were then. I further observe that the trial court continues to impose on this minor's right to relief preconditions not authorized by the statute and therefore continues to violate Art. III, § 43, Alabama Constitution of 1901, which commands: "the Judicial [department] shall never exercise the legislative ... powers...." Moreover, the trial court continues to ignore the minor's uncontroverted proof.
WOODALL, Justice (dissenting).
I respectfully dissent. Once again, this Court's blind adherence to the ore tenus rule has defeated the constitutional and statutory rights of a minor who seeks to have an abortion without parental consent.
The trial court found that the petitioner was not well-informed, because she had not spoken with the doctor who was to perform the abortion. There is no statutory requirement that a minor consult with the doctor who is to perform the abortion. See my dissent in Ex parte Anonymous, 803 So.2d 542, 569 (Ala.2001). This petitioner discussed abortion with her longtime personal physician, and there is no legal or factual basis for the trial court's conclusion that that discussion did not provide sufficient information concerning the abortion procedure.
The trial court found that the petitioner was not informed that the abortion might have long-term negative psychological effects. That conclusion is not supported by the record. The minor testified that she had read a paper from Planned Parenthood which dealt with the possible emotional aftermath of an abortion, including possible feelings of relief and guilt. When asked by the trial judge whether she had spoken with her pediatrician about the possible psychological or emotional consequences, the child stated: "Sort of. I talked to [the pediatrician]. I don't really think that I'dI'd probably feel bad, but I don't think it would have a long-term effect on me." The trial judge asked no follow-up questions about the substance of that conversation. The minor also testified that she was emotionally and mentally prepared to go through with the abortion.
If this Court is determined to apply the ore tenus rule in these sad cases, it should remember that the "rule does not extend to cloak a trial judge's conclusions of law, or incorrect application of law to the facts, with a presumption of correctness." Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala.1999). I would grant the petition. Therefore, I must dissent.
NOTES
[1] In Ex parte Anonymous, we also noted that the fact that hearsay evidence is admissible in waiver-of-parental-consent proceedings militates in favor of application of the ore tenus standard of review:

"Another significant and distinguishing characteristic of these types of cases is the admission of hearsay evidence. Under § 26-21-4(b), Ala.Code 1975, hearsay evidence is admissible in waiver-of-parental-consent proceedings. This, most certainly, is not the rule of law favored by our courts. `Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute.' Rule 802, Ala.R.Evid. This evidentiary rule is designed to ensure that the testimony elicited has a degree of reliability and truthfulness. Of course, the testimony offered in ordinary proceedings would be further subject to cross-examination, thus increasing its reliability. Here, neither of those safeguards is present. `The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of the witnesses.' Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). This rule of law is equally, if not especially, important in the context of waiver-of-parental-consent proceedings."
806 So.2d at 1276.
[2] "Equally clearly, an issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question." Miller v. Fenton, 474 U.S. 104, 113, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).
[3] In fact, in Jenkins, supra, the Court noted, "There is little to be found in the record about the film `Carnal Knowledge' other than the film itself." Jenkins, 418 U.S. at 158, 94 S.Ct. 2750.
[4] We also stated another concern in Ex parte Anonymous:

"In In the Matter of Anonymous, 803 So.2d 529, 534 (Ala.Civ.App.2001), the Court of Civil Appeals expressed its concern that attorneys representing minors in waiver-of-parental-consent cases were scripting their clients' testimony.
"`This causes particular concern for this court, which has reviewed too many cases in which a minor seeking a waiver of parental consent to an abortion testifies in an almost rehearsed manner that is virtually identical to the testimony detailed in many of the published opinions of the appellate courts of this state.'
"The trial court is better suited to evaluate whether the minor's testimony is spontaneous or rehearsed. It is the only court that can perceive furtive or reassuring glances and gestures. Contrary to the petitioner's argument, this Court is not in a better position than the trial court to determine maturity. Clearly, the trial court, as the factfinder, has the advantage in discerning maturity and best interest."
806 So.2d at 1274.