[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1271 
An unemancipated minor petitions this Court to review the judgment of the Court of Civil Appeals affirming the trial court's denial of the minor's petition for a waiver of parental consent to an abortion. We uphold the judgment of the Court of Civil Appeals and deny the petition.
 I.
On May 25, 2001, the minor filed a petition in the trial court, seeking a waiver of parental consent to an abortion. Prior to the hearing on her petition, the petitioner's attorney filed a motion seeking the recusal of the trial judge; that motion was subsequently denied.[1] On May 30, 2001, the trial court conducted a hearing on the minor's petition. At the conclusion of the hearing, the trial court orally denied the petition. The trial court then entered a written order denying the minor's petition. The minor appealed to the Court of Civil Appeals, which, on June 8, 2001, affirmed the trial court's judgment, without an opinion.
The record in this case reflects that the minor is 16 years old. At the time of the hearing on her petition, she was approximately 10 1/2 weeks pregnant and had just completed her junior year of high school. The minor maintains a straight-A grade point average and is involved in extracurricular activities. She testified that she plans to attend college after she graduates from high school and that she currently has a part-time job. She further testified that the baby's father is 17 years old and that he will support her in whatever decision she makes.
The minor testified that she expects her parents would react poorly to the news of her pregnancy but that she had never discussed with them what their reactions might be if she were to become pregnant. She stated that she and her parents enjoy a good relationship and that her parents *Page 1272 
are both physicians.[2]
The minor testified that she spoke with her pediatrician "very briefly" about the medical procedure and that she further discussed her plans with a counselor at a center where pregnancy tests are performed. On at least three occasions, the minor attempted to speak to physicians and/or nurses at local abortion clinics — where she considered having the procedure performed — but on each occasion, the facility refused to allow her to speak to a physician or nurse about the abortion procedure. The record does not indicate why those medical facilities denied the minor's request to speak to a physician. The minor also has researched the procedure using the Internet.
The minor described the abortion procedure, stating that she would be placed under local anesthesia during the procedure and that the fetus would be removed by vacuum extraction.[3] She testified that she had been informed of the risks of the procedure, which, she said, included "hemorrhaging, infection, perforation of the uterus, as well as even death. There is also more risk for breast cancer I found out recently. And then mentally you have denial, fear, anger, thoughts of suicide, et cetera." She indicated that she was willing to accept these risks.
The minor testified that she had been made aware of alternatives to having an abortion, including rearing the child herself and placing the child for adoption but that she had rejected those alternatives. She testified that she would inform her older sister of the procedure and that her sister would "probably" assist her if any subsequent medical complications arose.
At the conclusion of the minor's testimony, the trial judge asked pointed question and then expressed her concerns about the minor's maturity and about whether the minor was sufficiently well-informed. In her written order denying the minor's petition for a waiver of parental consent, the trial judge stated:
 "The Court finds that the minor is not mature and well-enough informed to make a decision about abortion without the consent of a parent. The minor's parents, both physicians are uniquely equipped to advise her in this life crisis. The minor's testimony describes a functional family that is a viable social unit.
 "Neither the minor's testimony nor her carriage, demeanor or deportment satisfied this court's inquiry into her maturity. Further she lacks the reasoning and life experience necessary to make a knowing and informed decision that this life crisis dictates.
". . . .
 "This minor is woefully uninformed. Her testimony included a cursory recitation of the alternatives to abortion and her quick dismissal of those alternatives. The minor had a brief conversation with her pediatrician and the pediatrician expressed *Page 1273 
concern for the minor's health. The Court finds that this is the only professional advice the minor received.
 "Further, this minor was denied an opportunity to discuss the abortion procedure with abortion nurses or abortion doctors. Their refusal to provide the minor with information about abortion compels this court to find that this immature minor is lacking the ability to make a fully informed choice that considers the immediate and long range consequences of abortion.
". . . .
 "Therefore it is the finding of this court that the minor is not mature and well enough informed to intelligently decide to have an abortion without parental consent and that under the proposed circumstances and conditions abortion is not in the best interest of the minor."
The minor alleges, as grounds for reversing the judgment of the Court of Civil Appeals and granting her petition that our recent decision in Exparte Anonymous, 803 So.2d 542 (Ala. 2001), incorrectly construed controlling precedent. Specifically, she argues, the ore tenus standard of review should not apply to cases involving the waiver of parental consent to an abortion. We rejected that argument inEx parte Anonymous, supra, and we now reaffirm the holding in that case.
 II.
In 1993, this Court held that a trial judge's decision in a judicial-bypass proceeding is not entitled to an ore tenus presumption of correctness: "The only testimony in this case was by the minor petitioner; therefore, the testimony in this case is undisputed. When the facts are undisputed, the ore tenus rule has no application." Ex parteAnonymous, 618 So.2d 722, 725 (Ala. 1993) (citations omitted). A thorough review reveals that that holding was not based on an adequate reliance upon the language, purpose, or intent of the statute. Neither did it rely upon the nature of the proceedings. Rather, that Court recited a long-standing, simple rule of law and applied it without any substantive analysis.
The first question that Court should have asked, and that we ask, is whether the determination of maturity, of whether the minor is well-informed, and of whether an abortion is in the minor's best interest are questions of law or fact. The parental-consent statute itself provides sufficient guidance to answer this question. Section 26-21-4
Ala. Code 1975, specifically requires a hearing and requires the trial court to "issue written and specific factual findings" at the conclusion of the hearing. These requirements are not without meaning. The Legislature clearly contemplated that the trial court was in the best position — after conducting a hearing — to determine from its observations whether the witness was sufficiently mature and well-informed, or if a waiver of parental consent was in the best interest of the minor. As Justice Lyons said in Ex parte Anonymous, supra: "[I]t would make no sense for the Legislature to require a hearing before a judge during which a transcript of the proceedings must be recorded, followed by specific factual findings and conclusions, if the judge's role was essentially that of a court reporter. . . ." 803 So.2d at 556 (Lyons, J., concurring specially).
Furthermore, this conclusion is consistent with the conclusions reached by other courts. "[T]he determination of maturity is largely an issue offact. . . ." Indiana Planned Parenthood Affiliates Ass'n, *Page 1274 Inc. v. Pearson, 716 F.2d 1127, 1136 (7th Cir. 1983). "This requirement [that the petitioner be mature and sufficiently well-informed] implies that the trial judge is to weigh the evidence and determine the credibility of the minor or any other witnesses. These are typical fact-finding functions, performed by a trial court only after hearing the minor's live testimony and viewing her demeanor." In re Doe,19 S.W.3d 249, 253 (Tex. 2000). "[T]he question of what is or is not in `the best interests of the child' is a question of fact. . . ." Schotz v. Oliver, 361 So.2d 605, 607
(Ala.Civ.App. 1978). "The determination of the best interests of the child is a question for the trier of fact. `We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.'" Pacev. Pace, 22 P.3d 861, 865 (Wyo. 2001). The "best interests of a child is a matter or question of ultimate fact reviewable under the clearly erroneous standard of review." In re Doe, 89 Haw. 477, 487, 974 P.2d 1067,1077 (Haw.Ct.App. 1999).
Whether a minor is mature and sufficiently well-informed is a difficult, yet delicate and important, decision that a trial court must necessarily make, not only in light of the testimony of the minor, but also in the context of the minor's demeanor, background, and sundry other circumstances. Even the United States Supreme Court has acknowledged that it is "difficult to define, let alone determine, maturity. . . ."Bellotti v. Baird, 443 U.S. 622, 644 (1979).
In making such a difficult determination, a trial judge, observing the testimony, may draw inferences from the minor's composure, analytic ability, appearance, thoughtfulness, tone of voice, expressions, and her ability to articulate her reasoning and conclusions. In fact, no list of the inquiries or considerations pertinent to an assessment of maturity could purport to be exhaustive. Moreover, conclusions drawn from these observations must be carefully weighed in light of the minor's history, including her educational background and her socioeconomic status. "[T]he fact that a minor may be very much an adult in some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended." Bellotti, 443 U.S. at 644. Needless to say, many of the factors necessary for a trial court to make a determination of a petitioner's maturity do not readily transfer to the record for our consideration. The United States Supreme Court has concluded that "the peculiar nature of the abortion decision requires the opportunity for case-by-case evaluations of the maturity of pregnant minors." Id. at 644. Such case-by-case evaluations are best made by the trial court.
In In the Matter of Anonymous, 803 So.2d 529, 534 (Ala.Civ.App. 2001), the Court of Civil Appeals expressed its concern that attorneys representing minors in waiver-of-parental-consent cases were scripting their clients' testimony.
 "This causes particular concern for this court, which has reviewed too many cases in which a minor seeking a waiver of parental consent to an abortion testifies in an almost rehearsed manner that is virtually identical to the testimony detailed in many of the published opinions of the appellate courts of this state." *Page 1275 
The trial court is better suited to evaluate whether the minor's testimony is spontaneous or rehearsed. It is the only court that can perceive furtive or reassuring glances and gestures. Contrary to the petitioner's argument, this Court is not in a better position than the trial court to determine maturity. Clearly, the trial court, as the fact-finder, has the advantage in discerning maturity and best interest.
In Ex parte Anonymous, we affirmed our adherence to the rule of law that when facts are established indisputably, the ore tenus rule has no application. 803 So.2d at 546. However, in special writing to that opinion, which held that the ore tenus standard of review should be applied to waiver of parental consent proceedings, Chief Justice Moore quoted Judge Murdock's special concurrence to the Court of Civil Appeals' majority opinion in that case, which noted that "`[t]estimony' and `facts' are two different things. Witnesses give testimony; courts find facts." Judge Murdock also noted that just because a minor's testimony is unopposed, it cannot be said to be "`undisputed' in the conventional sense that justifies removing the trial court's inherent and traditional role of evaluating witnesses and their demeanor and credibility." Exparte Anonymous, 803 So.2d at 553, quoting In re Anonymous,803 So.2d at 536 (Ala.Civ.App. 2001) (Murdock, J., concurring specially).
In response, the petitioner argues that our holding in Ex parteAnonymous was made in the mistaken belief that it did not overrule, or seriously call into question, the general rule of law that "where theevidence [as opposed to facts] before the trial court is undisputed, as in this present case, this court shall consider the evidence de novo, indulging in no presumptions in favor of the trial court's determinations." Sasser v. Spartan Food Sys., Inc., 452 So.2d 475, 477
(Ala. 1984) (emphasis added); Fox Trail Hunting Club v. McDaniel,785 So.2d 1151 (Ala.Civ.App. 2000); and Beaversv. County of Walker, 645 So.2d 1365, 1373 (Ala. 1994). Specifically, the petitioner, in her brief, contends that the "fact that the Supreme Court referred to undisputed `evidence' in Sasser — not undisputed `facts' — is significant." She reasons that because testimony and evidence are synonymous, this Court should overrule our recent decision in Ex parte Anonymous and review the trial court's decision de novo
because the evidence, i.e., the minor's testimony, was undisputed.
First, the petitioner's argument ignores the statements in Sasser, FoxTrail Hunting Club, and Beavers, that clearly show that in these cases the facts, not just the evidence or testimony, were not disputed. "Thefacts of this case were submitted to the trial court by a joint stipulation. . . ." Sasser, 452 So.2d at 476 (emphasis added). "The trial court noted that the facts presented by the parties were largely undisputed." Fox Trail Hunting Club, 785 So.2d at 1153 (emphasis added). "The facts in this case are not disputed. . . ." Beavers, 645 So.2d at 1373 (emphasis added). Thus, even though the rule of law this Court and the Court of Civil Appeals used to describe the lack of evidentiary contentions did not specifically mention "facts," the language of the cases certainly make clear that the facts, as opposed to testimony, were not disputed.
Moreover, the petitioner's argument here focuses on semantics, it ignores the inherent difference between the nature of the proceedings in this case and in Sasser. In Sasser, the controversy involved *Page 1276 
adversaries with competing interests who jointly stipulated to thefacts underlying their controversy. Here, the very nature of the proceeding is so unlike that of Sasser as to be distinguishableon its face. For instance, as previously stated, the hearing inSasser was adversarial. Unlike the hearing in Sasser, a hearing on a petition for a waiver of parental consent is not only nonadversarial in nature, it specifically denies those persons who arguably are interested in the outcome — i.e., the minor's parents and other family members — the right to appear and be heard. Moreover, the mandated secrecy of the hearing prevents anyone, at least in theory, from opposing the minor.
Alabama courts have previously noted the inherent difficulties and dangers of rendering opinions in such unilateral proceedings:
 "However, this procedure is not without difficulty in that the opportunity is not generally available for opposing views to present their respective positions, nor are pertinent facts presented as is usual in the adversary nature of our judicial system. The Supreme Court's primary function is one of appellate review, exercised in the context of adversary proceedings. The very nature of our judicial process mandates that decisions be rendered only after all sides have presented their respective views. . . ."
Opinion of the Justices No. 280, 417 So.2d 936, 936 (Ala. 1981).
In these types of cases, the usual vigorous and competing advocacy, which typically makes the adversary system an effective means for discovering the truth, is conspicuously absent. As a result, the need for a perceptive, intuitive, and discerning trial judge, as well as his or her specific factual findings, is arguably more necessary than in other cases where opposing advocacy ultimately reveals the facts.
Another significant and distinguishing characteristic of these types of cases is the admission of hearsay evidence. Under § 26-21-4(b), Ala. Code 1975, hearsay evidence is admissible in waiver-of-parental-consent proceedings. This, most certainly, is not the rule of law favored by our courts. "Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute." Rule 802, Ala.R.Evid. This evidentiary rule is designed to ensure that the testimony elicited has a degree of reliability and truthfulness. Of course, the testimony offered in ordinary proceedings would be further subject to cross-examination, thus increasing its reliability. Here, neither of those safeguards is present. "The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of the witnesses." Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). This rule of law is equally, if not especially, important in the context of waiver-of-parental-consent proceedings.
As we held in Ex parte Anonymous, the fact that the petitioner's testimony is not contradicted by other testimony cannot render it undisputed, because there remains the question of its probability as well as the credibility and demeanor of the witness and her vested interest in the result. The following principle is equally well established, both in terms of its acceptance and antiquity: "The court cannot determine, and thereby take away from the jury, the right to pass upon the credibility of oral testimony, even though it *Page 1277 
is without conflict." Swindall v. Ford, 184 Ala. 137, 63 So. 651, 655
(Ala. 1913).[4] See In re Estate of Frances Williams MesserTrust, (No. 220177, May 29, 2001) (Mich.Ct.App.) (unpublished) ("Again, while we do not have the full record on appeal, the pleadings indicate that even where facts were undisputed, the construction of the facts and the assessment of credibility of witnesses was crucial.");Ross v. Paddy, 340 S.C. 428, 532 S.E.2d 612
(Ct.App. 2000); Wheat v. Red Star Exp. Lines, 156 Conn. 245,248, 240 A.2d 859, 861 (1968) ("It was the commissioner's function to find the facts and determine the credibility of witness [sic]; and a fact is not admitted or undisputed merely because it is uncontradicted.") (citations omitted); Yager v. Bellco Midwest, 236 Neb. 888, 897,464 N.W.2d 335, 341 (1991) ("The compensation court is not bound by the testimony of an expert, nor is this court to determine the weight and credibility of such evidence. . . . Apparently, that court chose not to believe the undisputed testimony of plaintiff's medical witness, but this court cannot say that decision was erroneous as a matter of law.")
 "Following the hearing, the judge made a finding that the petitioner, who is fourteen years old, was not sufficiently mature to give an informed consent to have an abortion. Findings of a judge in this kind of proceeding are entitled to no less deference than that which a reviewing court generally accords findings of fact by a trial court; i.e., they shall not be set aside unless clearly erroneous. As regards a quality such as maturity, we think the judge's opportunity to see and hear the petitioner, her tone of voice, her expressions, and her overall demeanor place the judge in a particularly advantaged position to make the factual determination."
Matter of Moe, 12 Mass. App. Ct. 298, 298-99, 423 N.E.2d 1038, 1039-40
(1981) (citations omitted). See also Redden v. State,804 So.2d 196, 201 n. 3 (Ala. 2001) ("Although we have concluded that the evidence in this case is undisputed, we note that the fact that the trial court viewed the property might warrant a more deferential standard of review.").
 "The trial judge was in a far better position than are we to determine, as a matter of fact, the minor's maturity and level of knowledge. The Legislature has mandated that a decision to grant or to deny a waiver of the requirement of parental consent is to rest upon an evaluation of the minor's maturity and level of knowledge. We conclude that because the decision must be based upon facts gleaned from the testimony best evaluated by the trial court, the ore tenus rule should apply."
Ex parte Anonymous, 803 So.2d at 546 — 47.
 III.
The petitioner next argues that, assuming that the minor's maturity is disputed, the underlying facts themselves, i.e., the petitioner's inquiries of medical personnel, her school-related involvement and performances, etc., are not disputed. She argues that any determination of maturity must, in essence, turn on these undisputed facts, and that, therefore, it is proper for this *Page 1278 
Court to apply the law to these undisputed facts and to review the trial court's conclusions de novo. "[W]here the facts are not disputed theore tenus standard does not apply. Furthermore, that standard's presumption of correctness has no application to a trial court's conclusions on questions of law." Beavers, 645 So.2d at 1372 (citations omitted). In essence, the petitioner argues that the trial court's conclusions were incorrect as a matter of law.
Under Alabama's parental-consent statute, § 26-21-1 et seq., Ala. Code 1975, the Legislature expressly found that "parental consultation is usually desirable and in the best interests of the minor." §26-21-1(b). In reaching this conclusion, the Legislature specifically found:
 "(1) [I]mmature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, (2) the medical, emotional and psychological consequences of abortion are serious and can be lasting, particularly when the patient is immature, (3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, (4) parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child, and (5) parents who are aware that their minor daughter has had an abortion may better insure that she receives adequate medical attention after her abortion."
§ 26-21-1(b), Ala. Code, 1975. Moreover, it was the "intent of the Legislature to further the important and compelling state interests of: (1) protecting minors against their own immaturity, (2) fostering the family structure . . ., and (3) protecting the rights of parents. . . ." § 26-21-1(a). These goals and findings are clearly sanctioned by the United States Supreme Court. See Bellotti, supra.
However, a minor who elects not to seek consent from either a parent or a legal guardian may petition the courts for a waiver of the requirement that a parent or legal guardian consent to her having an abortion. The requirement of parental consent shall be waived if the trial court hearing the minor's petition finds either: "(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or (2) That performance of the abortion would be in the best interest of the minor." § 26-21-4(f), Ala. Code 1975.
The petitioner would have us hold, as a matter of law, that the facts in the instant case are sufficient to demonstrate that she is mature and sufficiently well-informed to receive a waiver of parental consent for an abortion. This we are not prepared to do. Words in a transcript that suggest maturity may, in fact, be disputed by the delivery of the witness's own testimony and by her demeanor. As we have already stated, the trial court is in the best position to determine these factual issues.
 IV.
Judge Yates, in her special concurrence in In the Matter of Anonymous, expressed numerous misgivings regarding our holding in Ex parteAnonymous. 806 So.2d 1267 (Ala.Civ.App. 2001) (Yates, P.J., concurring specially). She stated, "[T]hese cases [involving a waiver of parental consent] will no longer require the thoughtful judicial review I have seen this court give over the years in deciding these hard cases; I am afraid Ex parte Anonymous *Page 1279 
will result in this court's merely giving a stamp of approval to any one trial judge's view on this very difficult issue." 806 So.2d at 1268. The appellate courts of this State take this issue very seriously, and haphazard review of these cases should not occur. In fact, our own independent and complete review of the record leads us to the conclusion that the trial court's conclusions are correct and are supported by the record.[5]
Nevertheless, the trial court clearly has the advantage, as the fact-finder, of seeing the minor while she testifies. This is precisely why its decision should be accorded deference. "A determination of maturity necessarily involves more trial court discretion." In re Doe,19 S.W.3d 249, 257 (Tex. 2000). The record on appeal does not indicate that the trial court in this case was plainly or palpably wrong in its determinations. For these reasons, we deny the petition.
PETITION DENIED.
See, Lyons, Brown, and Stuart, JJ., concur.
Houston and Harwood, JJ., concur in the result.
Johnstone and Woodall, JJ., dissent.
[1] The petitioner has not challenged the trial court's denial of that motion.
[2] The minor testified that her relationship with her mother was "pretty good" and she indicated, "We can normally talk about whatever is on my mind or whatever is on her mind." She stated that her relationship with her father is "the same although it's a little bit more — sort of like the feelings are intense sort of like — there's usually more fear, if that makes sense." The minor's use of the word "fear" seems to indicate her apprehension regarding her father's approval or disapproval. At no time did the minor suggest that her relationship with her father was bad or even strained.
[3] She could not say with certainty, however, that this was the procedure that would be used in her case.
[4] Some may argue that Swindall is distinguishable from the present case because the trial court in Swindall refused to allow testimony contradicting the "undisputed" testimony. There can be no significant difference because here, like Swindall, the trial court is prohibited — by statute — from allowing other interested parties to offer contradictory testimony.
[5] We can find nothing in the record to support Judge Yates's assertion. To the contrary, since Ex parte Anonymous was decided, the Court of Civil Appeals has remanded at least one of the handful of waiver of parental-consent cases it has reviewed to the trial court for the entry of specific findings for use in its review.