I dissent from the majority's affirmance in this case. The trial court entered a "Denial of Waiver of Consent Order" on a preprinted form provided for such denials. The trial court filled in the blanks regarding the minor's age and the length of her pregnancy. In a large blank space on the form (preceded by the phrase "The Court further finds that"), the trial court wrote:
 "Child testified that she would kill herself if she were not allowed to have abortion. That she is too selfish to care for another child, as she is one of primary caretakers of her niece. The Court does not believe that child has considered the emotional trauma that an abortion would have on her. After observing child's demeanor this Court does not believe it to be in the child's best interest to have an abortion without further counseling and or discussion with family members."
Section 26-21-4(f), Ala. Code 1975, provides that parental consent shall be waived if the court finds either that the minor is mature enough and well-informed enough to make the abortion decision or that an abortion would be in the minor's best interest. Section 26-21-4(g) provides that the trial court must "issue written and specific findings and legal conclusions supporting its decision."
I recognize that pursuant to Ex parte Anonymous, 803 So.2d 542 (Ala. 2001), the ore tenus rule now applies to a trial court's findings of fact in a waiver-of-parental-consent case; however, under the particular facts of this case, I believe that the trial court's judgment is plainly erroneous and manifestly unjust.
The minor, who will be 17 years old in less than 30 days, testified that her parents are opposed to abortion and that she was afraid of her parents' reaction to her pregnancy. Specifically, she testified that she has gone through the experience of her older sister's becoming pregnant and her parents' forcing her sister to keep the child and that, as a result, "everyone was miserable." Her parents would not let her sister put the child up for adoption. Her sister had to drop out of college while trying to care for the child. According to the minor, her sister would "just break down" and the parents subsequently adopted the child themselves. The minor testified that the child is now a toddler and that she spends a great deal of her time caring for this baby, even keeping a car seat in her car so that she can transport the child. The sister is moving out of the parents' home in two months, leaving the baby behind for the minor to continue to help rear. In discussing the financial problems her family faced after her parents had adopted her sister's child, the minor said that, on one occasion, her mother reacted to those financial problems by hitting the minor with the heel of her shoe, giving the minor a black eye. The minor also has a much younger brother that her parents are caring for.
The minor testified that, if she has the baby, she will have to drop out of high school. She testified that she had discussed the pregnancy with her boyfriend, who will be 17 years old in a few weeks, and his mother and that they supported her decision because, she stated, they believe the couple is too young to have a child. In response to the trial court's questioning, the minor testified that she is healthy, that she never drinks alcohol or uses illegal drugs, and that she participates in sports at her school. She stated that she discussed the abortion procedure with counselors at a clinic and that, if she had an abortion, her older sister would be going with her. She stated that she had waited 24 hours after the counseling session before seeking a waiver of parental *Page 506 
consent.[5] The minor testified that she feared her mother would physically abuse her if she had to tell her about the pregnancy. She stated that her mother had physically assaulted her and her sister in the past for no apparent reason.
It is clear from the record that the minor's parents have previously encountered an unplanned pregnancy, what their reaction was to that pregnancy, and how the decision not to abort the pregnancy has affected their family. "Whether a minor is mature and sufficiently well-informed is a difficult, yet delicate and important, decision that a trial court must necessarily make, not only in light of the testimony of the minor, but also in the context of the minor's demeanor, background, and sundry other circumstances." Ex parte Anonymous, 806 So.2d 1269, 1274 (Ala. 2001). The minor testified that she already has the burden of caring for her sister's child and that she would have to drop out of high school and abandon her plans for college in order to care for a baby. She testified clearly as to the impact of forcing her to go through with the pregnancy.
 "A: I mean, it's the only other choice I have. I can't have it. I'm not saying I want to kill myself. But I'm saying that I think it would literally drive me that crazy because right now my niece — you know, the kid that my parents adopted is pretty much like mine. I mean, I have a car seat in my car for her. She's pretty much my daughter and everybody thinks it. I mean, it's already hard naturally as it is with her.
 "I just — I couldn't take a kid. I mean, I know that I'm not — I couldn't raise it. I can't even support myself. My parents still support me. I know that, you know, I'm too selfish to support a kid or anything. I couldn't do it.
 "[The Court]: That's why I was asking if you had considered other alternatives.
 "A: I have. But if my parents knew that I was, then they would make me keep it. I would have no other choice."
The court concluded the hearing by stating, in part, "Whatever I do though you've got to think of two things. You've got to think of yourself and you still have to think of the baby."
"The `best interests of a child is a matter or question of ultimate fact reviewable under the clearly erroneous standard of review.'" Ex parte Anonymous, 806 So.2d at 1274, quoting In re Doe, 89 Haw. 477, 487,974 P.2d 1067, 1077 (Haw.Ct.App. 1999). The minor has experienced firsthand the impact of rearing a child born as a result of an unplanned pregnancy. She knows that her parents would force her to keep the baby. She does not have the option of carrying to term and then placing the baby for adoption. Given her testimony and the totality of the circumstances in this case, the record clearly reflects that it would be in the best interest of the minor to grant the waiver of parental consent.
[5] The minor is apparently referring to § 26-23A-4, Ala. Code 1975, which provides that at least 24 hours before an abortion is performed, a woman must be provided certain information so as to give voluntary and informed consent to the abortion. *Page 507