888 So.2d 1265 (2004)
In the Matter of ANONYMOUS, a minor.
2030494.
Court of Civil Appeals of Alabama.
March 3, 2004.
Opinion on Return from Remand March 8, 2004.
*1266 PER CURIAM.
An unemancipated minor appeals from a judgment denying her petition for a waiver of parental consent to an abortion pursuant to § 26-21-1 et seq., Ala.Code 1975. We remand.
A juvenile court shall grant a petition for a waiver of parental consent to an abortion if it finds either "(1) [t]hat the minor is mature and well-informed enough to make the abortion decision on her own; or (2)[t]hat performance of the abortion would be in the best interest of the minor." § 26-21-4(f), Ala.Code 1975 (emphasis added). See Ex parte Anonymous, 595 So.2d 497, 498 (Ala.1992). In order to deny a petition for a waiver of parental consent, however, a juvenile court must make two findings.
"`[A] petition for waiver of parental consent may be denied only if the court specifically finds both that (1) the minor is immature and not well enough informed to make the abortion decision on her own and (2) that performance of the abortion would not be in her best interests.'"
Ex parte Anonymous, 618 So.2d 722, 723 (Ala.1993)(quoting Ex parte Anonymous, 595 So.2d at 498).
In the present case, the juvenile court made the following finding:
"The minor is not sufficiently mature and well-informed enough to make the abortion decision on her own. The Court makes the following specific factual findings in support of this conclusion:

*1267 "(a) The Court closely observed the demeanor of the minor. The minor's demeanor, coupled with her young age, evidence an immaturity for making decisions with significant consequences.
"(b) The minor maintains an overall `C' average in school, which evidences her immaturity and her lack of ability to make a well-reasoned decision.
"(c) The minor has never engaged in employment on her own other than in her family business, which constitutes a lack of decision-making experience.
"(d) Based on the totality of the evidence and the Court's personal observation of the witness, the Court is of the opinion that the minor is not mature enough to make the decision on her own."
Our holding in In re Anonymous, 711 So.2d 475 (Ala.Civ.App.1998), is applicable here:
"The order in this case found only that the minor was not well enough informed about the emotional effects of the procedure to make the abortion decision independently. The juvenile court made no finding regarding the best interests of the minor. Given the absence of such a finding in the juvenile court's order, we conclude that the judgment denying the minor's petition for a waiver of parental consent is fatally flawed, and we remand the cause for the juvenile court to enter an order that meets the statutory requirements."
711 So.2d at 476.
Judge Murdock's special writing maintains that principles of logic do not require that a minor plaintiff be denied relief only if the trial court finds that the minor is not mature and sufficiently well-informed to make the abortion decision on her own (the negative of "x") and that an abortion would not be in the minor's best interests (the negative of "y"). According to the Judge Murdock's special writing, such a requirement would establish a "default rule" in favor of the minor in judicial-bypass cases. These arguments overlook the fact that our supreme court has repeatedly construed the statutory directive of § 26-21-4(f) to state exactly the rule that Judge Murdock considers "illogical." Moreover, if any "default rule" has been established in judicial-bypass cases, it has not been established by the judiciary, but by the legislature. Section 26-21-1(b) states, in effect, a presumption or "default rule" that "parental consultation is usually desirable and in the best interests of the minor" and that the minor, to be entitled to relief, must show that parental consultation is not in her best interests.
Pursuant to the statutory directive of § 26-21-4(g) that the trial court "issue written and specific factual findings and legal conclusions supporting its decision," the cause is remanded to the juvenile court; that court should submit a return to remand to this court no later than 12:00 p.m. on Friday, March 5, 2004.
REMANDED WITH INSTRUCTIONS.
CRAWLEY and PITTMAN, JJ., concur.
YATES, P.J., concurs in order of remand only, without writing.
MURDOCK, J., concurs in order of remand only, with writing, which THOMPSON, J., joins.
MURDOCK, Judge, concurring in order of remand only.
I cannot agree with the rule of decision with which the main opinion apparently remands this case.
*1268 Section 26-21-3(a), Ala.Code 1975, of Alabama's parental-consent statute provides, in part, that "[e]xcept as otherwise provided in subsections (b) and (e) of this section and Sections 26-21-4 and 26-21-5 [, Ala.Code 1975,] no person shall perform an abortion upon an unemancipated minor unless he or his agent first obtains the written consent of either parent or the legal guardian of the minor." In order to "bypass" this restriction, the statute places upon the minor the burden of pleading, and also the burden of proving, either (a) that she is mature enough and well informed enough to intelligently make the decision whether to have an abortion without the consent of either of her parents or her legal guardian or (b) that parental consultation is not in her best interests. See §§ 26-21-4(d)(4) and 26-21-4(f). Nonetheless, as noted in the main opinion, our Supreme Court has stated that a "petition for waiver of parental consent may be denied only if the court specifically finds both that (1) the minor is [not mature enough] and not well enough informed to make the abortion decision on her own and (2) that performance of the abortion would not be in her best interests." Ex parte Anonymous, 618 So.2d 722, 723 (Ala.1993) (emphasis on "not" added; other emphasis original). As a matter of logic, however, saying that a plaintiff shall be entitled to relief if she can prove "x" or "y" is not the same as saying that a plaintiff may be denied that relief only if the trial court can and does find the negative of "x" and the negative of "y." To state the rule of decision in the latter way removes the burden of proof from the minor and establishes a default rule that the minor is entitled to obtain an abortion without her parent's consent.[1] I write today to express my view that the parental-consent statute does not appear to establish such a rule of decision; nor do I believe our Supreme Court has intended to do so. For example, I do not believe that the statute provides  or that our Supreme Court has intended to hold  that a trial court, in order to uphold the requirement that the minor obtain parental consent before obtaining an abortion, must affirmatively find that parental consultation is not in the minor's best interests; as to this prong, it is enough that the minor simply fails to meet her burden of proving that it is in her best interests to proceed without her parent's consent.
On remand in the present case, therefore, assuming without deciding that the trial court is due to be affirmed on its finding as to the issues of the minor's maturity and how well informed she is, I believe the trial court could decline to grant to the minor judicial consent to obtain an abortion if the trial court finds (and the record supports such a finding) that the minor failed to meet her burden of proof as to the issue of her best interests. I do not think it necessary that the trial court, in order to deny the requested relief, must affirmatively find that it would not be in the minor's best interests to obtain her parent's consent.
THOMPSON, J., concurs.

On Return from Remand
PER CURIAM.
In order to deny a minor a waiver of parental consent for an abortion, a trial court must specifically find that the minor is immature and not well enough informed to make the abortion decision on her own and that performance of the abortion *1269 would not be in her best interest. Ex parte Anonymous, 618 So.2d 722, 723 (Ala.1993)(quoting Ex parte Anonymous, 595 So.2d 497, 498 (Ala.1992)), overruled on another ground, Ex parte Anonymous, 803 So.2d 542 (Ala.2001). The trial court denied the waiver in this case, initially finding that the minor was not sufficiently mature and well-informed enough to make the abortion decision on her own. The trial court failed to make a finding, however, as to whether an abortion was in the minor's best interest. Therefore, on March 3, 2003, we remanded this cause for the trial court to address that issue and to make specific findings. On remand, the trial court entered the following order:
"Additionally, the Court finds that performance of the abortion would not be in the minor's best interest. This conclusion is based on the following factors:
"(1) The minor is not sufficiently mature and well-informed enough to make the abortion decision on her own;
"(2) The minor does not have sufficient maturity to fully understand the possible psychological consequences of her decision;
"(3) There is no definitive evidence that one or both of the minor's parents would not help in assuming the responsibilities of motherhood. The minor testified that she has discussed the pregnancy with her mother. The minor's mother will not give her consent for fear that her husband (the minor's father) will be upset. (The parents are apparently experiencing some marital difficulties.) The minor testified that she is also afraid that her pregnancy would upset her father. The minor's testimony in support of her claim that it would be in her best interest not to obtain her parents' consent is somewhat speculative based on the minor's opinion that her father would be `upset.' There is no evidence of the probability of a drastic consequence, such as the minor's being forced to leave home."
At a February 26, 2004, hearing on her petition, the minor testified that she is 15 years old, that she will soon be 16 years old, and that she was 11 weeks pregnant at that time. The minor is a tenth-grade student; she maintains a "C" grade-point average. She plans to continue her education in a trade school after her graduation from high school. She has had a part-time job doing general office work in a family-run business.
The minor learned of her pregnancy when she visited a gynecologist; she and the doctor discussed "the pros and cons of abortion or adoption or having the child." After that, the minor discussed the situation with her mother, her boyfriend (the father of her unborn child), and her boyfriend's family. The minor testified, "[My mother] wants the decision [whether to have an abortion] to be totally my decision; she doesn't want to have any part of it because she wants it to come from my heart, not hers." The minor said that her mother would support her decision to have an abortion but her mother wanted the minor to make the decision. The minor stated that she had no doubt that, if she were to have an abortion, her mother would continue to love her and to take care of her. The minor and her mother have not told the minor's father about the minor's pregnancy or the minor's decision to seek an abortion. The minor explained that her parents were having marital problems, that her father was depressed, and that she was afraid that if her father learned of her pregnancy he would be very angry and would blame himself.
*1270 The minor testified that she went to four pregnancy-counseling clinics in her home county, but that the personnel at those clinics "did not explain anything" to her and were not helpful. She characterized her experience in attempting to obtain help in her home county as having been given the "run around." She explained that the staff at the clinics she visited told her that they could not counsel her without either a signed parental-consent form or a judicial bypass of that consent from the juvenile court. She said that, when she went to the juvenile court in her home county, court personnel told her that she could not obtain a judicial bypass without having undergone counseling. At her mother's urging, the minor went to a clinic operated by a pro-life organization, where she received counseling about the physical risks and psychological effects of having an abortion. She stated that, after that counseling, she concluded that having an abortion was the right decision for her. She testified:
"I'm fifteen and I can't support a baby. My family can't support a baby. I wouldn't even know how to begin  I don't have any money. I would have to have a job, which I'm not even old enough to do yet. I have no money saved. I can't probably support a baby. The baby wouldn't have a nice life. And if it was an unhealthy baby I wouldn't have any money; it would have to go untreated."
The minor testified that someone in her home county suggested that she file her petition for the waiver of parental consent in another county. When she went to a pregnancy-counseling clinic in that other county, she watched a video about the abortion procedure, spoke to a physician, and ascertained that the physician was board-certified. She described her experience at that clinic:
"I was counseled and I talked to the people there and they told me everything that would happen. They told me the possible risks and if I had it what I should look for and what might happen to me afterwards."
The minor recited the risks of which she had been informed, including a chance that she might be unable to have children in the future, that she would have a greater risk of breast cancer, and that the abortion procedure might have to be repeated because of complications. She also detailed certain danger signs that she was cautioned to look for after an abortion procedure, including fever, bleeding, and clotting. She stated that, having been informed of the possible risks, she had nevertheless decided that having an abortion was the right decision for her.
When she was asked whether she had considered having the baby and placing the baby for adoption, the minor replied, "My family doesn't want me to do adoption and [my boyfriend's] family doesn't want adoption." She stated that both her boyfriend and his mother supported her decision to have an abortion. When she was questioned about the psychological effects of having an abortion, the minor said, "I do not think that I am at high risk for depression or I don't think I'll regret it.... It is very sound in my mind and in my heart that this is the best choice for me." The court asked the minor, "When you say judicial bypass, what do you understand that to mean?" The minor responded, "That the court acknowledges that I wish to have an abortion without my parents knowing."
The mother of the minor's boyfriend testified that she believed the minor was "very mature," that she thought the minor had considered "every possible option," and that she felt the minor had come to a "mature decision." The boyfriend's mother *1271 stated that she had spoken to the minor's mother about signing a form giving her consent to an abortion for the minor. The minor's mother said that her marriage was "in trouble" and "she ... didn't want [the minor's] father to know and that if she signed ... and he found out later... there would be more trouble."

The "Maturity" Prong  § 26-21-4(f)(1), Ala.Code 1975
In Ex parte Anonymous, 806 So.2d 1269 (Ala.2001), our supreme court made it clear that the "`determination of maturity is largely an issue of fact.'" 806 So.2d at 1273 (quoting Indiana Planned Parenthood Affiliates Ass'n v. Pearson, 716 F.2d 1127, 1136 (7th Cir.1983)). The court explained:
"`This requirement [that the petitioner be mature and sufficiently well-informed] implies that the trial judge is to weigh the evidence and determine the credibility of the minor or any other witnesses. These are typical fact-finding functions, performed by a trial court only after hearing the minor's live testimony and viewing her demeanor.' In re Doe, 19 S.W.3d 249, 253 (Tex.2000)."
806 So.2d at 1274.
The trial court made four factual findings with respect to the first prong of § 26-21-4(f), that is, whether the minor was sufficiently mature and well-informed enough to make the abortion decision on her own. The first and last findings were linked to observations of the minor's demeanor. The second and third findings related to the minor's academic status and her employment experience. Because the second and third findings were not linked to the trial court's observation of the minor's demeanor while she testified at the hearing, the validity of the second and third findings "turns upon the merit of the objective factors upon which the trial court relied." See Ex parte Anonymous, 810 So.2d 786, 795 (Ala.2001)(Lyons, J., concurring in the result).
The trial court based its determination that the minor was not mature, in part, upon the fact that she maintained only a "C" average in high school, saying that doing so "evidences her lack of ability to make a well-reasoned decision." Our supreme court has stated that "`[a] child's age, educational background or grades in school, while indicative of some level of maturity, are not conclusive on the issue of maturity.'" Ex parte Anonymous, 803 So.2d at 559 (quoting In re Jane Doe, 19 S.W.3d 249, 257 (Tex.2000))(emphasis omitted). The record does not support using the fact that the minor's academic standing is average as a basis for deciding that she is unable to make a well-reasoned decision. The minor's educational goal (attending a trade school following high school) appears to be consistent with her academic achievement level. Thus, the record supports a determination that the minor has realistically assessed her career prospects in light of her academic aptitude or achievement, and has, therefore, made a well-reasoned decision about her future. We entertain similar doubts about the objective validity of the trial court's finding that the minor's working only part-time in a family business indicates a lack of decision-making experience.
Nevertheless, because the trial court's first and last findings relating to the minor's immaturity are directly linked to the trial court's observation of her demeanor, we must accord those findings "considerable deference." See Ex parte Anonymous, 803 So.2d 542:
"[W]here the trial court has had the opportunity to observe the witness and where assessments of the level of the minor's maturity are crucial  the trial court's findings should be afforded considerable deference. Here, the trial *1272 judge had the responsibility of determining the facts. In particular, it was the trial judge's responsibility to determine whether the petitioner is mature enough and well-informed enough about the abortion procedure to make an independent decision whether to undergo an abortion without parental consent. See § 26-21-4(f), Ala.Code 1975. In addition to hearing the testimony, the trial judge could observe the minor and could consider her demeanor as she testified. That aspect of the evidence is denied an appellate court by a cold record. The trial judge was in a far better position than are we to determine, as a matter of fact, the minor's maturity and level of knowledge. The Legislature has mandated that a decision to grant or to deny a waiver of the requirement of parental consent is to rest upon an evaluation of the minor's maturity and level of knowledge. We conclude that because the decision must be based upon facts gleaned from the testimony best evaluated by the trial court, the ore tenus rule should apply.
"When applying the ore tenus standard of review, we will reverse a trial court's judgment only when that judgment is `plainly erroneous or manifestly unjust.'"
803 So.2d at 546-47 (footnote and citation omitted).
Applying the ore tenus standard of review to the trial court's first and last findings regarding the minor's maturity, those that are linked to the demeanor and credibility of the minor, we cannot conclude that the trial court's finding of immaturity is "plainly erroneous or manifestly unjust."

The "Best-Interest" Prong  § 26-21-4(f)(2),

Ala.Code 1975
Like the "maturity" determination required pursuant to § 26-21-4(f)(1), the "best interest" determination mandated by § 26-21-4(f)(2) is also a question of fact.
"`[T]he question of what is or is not in "the best interests of the child" is a question of fact....' Schotz v. Oliver, 361 So.2d 605, 607 (Ala.Civ.App.1978).... The `best interests of a child is a matter or question of ultimate fact reviewable under the clearly erroneous standard of review.' In re Doe, 89 Haw. 477, 487, 974 P.2d 1067, 1077 (Ct.App.1999)."
Ex parte Anonymous, 806 So.2d at 1274.
However, unlike the question of what factors might indicate a minor's maturity or lack of maturity  a question that has been explicated in almost 20 years of caselaw  what constitutes a minor's "best interest" is largely undefined in Alabama law. The scarcity of decisions directly resting on the "best interest" prong of § 26-21-4(f)(2) can, no doubt, be attributed to the fact that because only one prong of the two-pronged test need be satisfied in order to obtain a waiver of parental consent for an abortion, many of the decisions discuss only the first prong. See In re Anonymous, 628 So.2d 854, 855 (Ala.Civ.App.1993)(stating that "[h]aving found that the minor met her burden of proof as to the first prong of § 26-21-4(f), we need not address whether the performance of the abortion would be in the best interest of the minor").
The Alabama Supreme Court has held that a trial court's determination that an abortion was not in the best interest of a 12-year-old ward of the State, whose pregnancy was the result of a statutory rape and whose prognosis for a safe delivery was only "fair," was unsupported by the evidence. Ex parte Anonymous, 531 So.2d 901, 903 (Ala.1988). This court has upheld the trial court's determination that *1273 the performance of an abortion without parental consent would not be in a minor's best interest because the minor had unfounded concerns that her parents would "throw her out" if she were pregnant. See In re Anonymous, 597 So.2d 709, 710 (Ala.Civ.App.), petition denied, 597 So.2d 711 (Ala.1992). Whether the result in the latter case would have been different if the minor's concerns had been proven to be founded is unknown. Compare In re Anonymous, 684 So.2d 1337, 1338 (Ala.Civ.App.1996)(declining to discuss minor's argument that an abortion was in her best interest because her parents had threatened to "kick her out" if she ever got pregnant).
In Ex parte Anonymous, supra, 595 So.2d at 498, the Alabama Supreme Court, quoting Bellotti v. Baird, 443 U.S. 622, 642-43, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), listed several factors relevant in determining whether abortion is in a minor's best interest:
"`[A]n abortion may not be the best choice for the minor. The circumstances in which this issue arises will vary widely. In a given case, alternatives to abortion, such as marriage to the father of the child, arranging for its adoption, or assuming the responsibilities of motherhood with the assured support of family, may be feasible and relevant to the minor's best interests.'"
In the present case, the first two factual findings in the trial court's order on remand, which purport to address the "best interest" question, actually relate to the first prong of § 26-21-4(f)  the maturity determination  and add nothing to the "best interest" inquiry. Therefore, we will focus solely on the trial court's third factual finding:
"(3) There is no definitive evidence that one or both of the minor's parents would not help in assuming the responsibilities of motherhood. The minor testified that she has discussed the pregnancy with her mother. The minor's mother will not give her consent for fear that her husband (the minor's father) will be upset. (The parents are apparently experiencing some marital difficulties.) The minor testified that she is also afraid that her pregnancy would upset her father. The minor's testimony in support of her claim that it would be in her best interest not to obtain her parents' consent is somewhat speculative based on the minor's opinion that her father would be `upset.' There is no evidence of the probability of a drastic consequence, such as the minor's being forced to leave home."
Based on the first sentence in the above finding, it is evident that the trial court determined (1) that the minor had been attempting to prove that an abortion was in her best interest because she had no other viable alternative to an abortion and (2) that the minor had failed to meet that burden of proof because she had not established that her parents were unable or unwilling to help her  either by adopting her child or by helping her rear a child. If our interpretation of the trial court's first sentence is correct, then it appears that this sentence mirrors the United States Supreme Court's statement in Bellotti v. Baird, 443 U.S. at 642-43, 99 S.Ct. 3035, quoted by our supreme court in Ex parte Anonymous, 595 So.2d at 498, that, "[i]n a given case, alternatives to abortion, such as marriage to the father of the child, arranging for its adoption, or assuming the responsibilities of motherhood with the assured support of family, may be feasible and relevant to the minor's best interests." Although the minor testified that her family could not "support a baby" and did not want to "do adoption," the trial court was authorized to give little credence to this *1274 testimony in light of the fact that the minor's mother stood ready to help her and the minor's father had not been given the opportunity to consider the emergency confronting the family.
The last sentence in the trial court's third factual finding appears to mirror the unaddressed "drastic-consequences" arguments made in some of the Alabama cases (i.e., that the minor's parents would "kick her out" if they learned of her pregnancy). Because of the paucity of decisions directly resting on the "best interest" prong, we are unsure of the exact parameters of the "best interest" calculus. However, we hold that the trial court's findings, mirroring as they do the limited discussion of "best interest" in our prior caselaw, are not only a correct application of relevant principles to the facts adduced at trial but are also not "plainly erroneous or manifestly unjust." See Ex parte Anonymous, 803 So.2d at 547.
The judgment of the trial court is affirmed.
AFFIRMED.
CRAWLEY and PITTMAN, JJ., concur.
YATES, P.J., and THOMPSON, J., concur in the result, without writing.
MURDOCK, J., dissents, with writing.
MURDOCK, Judge, dissenting.
The law by which this court is bound compels me to conclude that we must again remand this cause to the trial court. Therefore, I must respectfully dissent.
Before turning to the reason why I believe it is necessary to again remand this cause, I first reiterate my disagreement with the rule of decision stated in the opening paragraph of the main opinion. As explained in my separate writing on this court's original consideration of this case, I believe the rule of decision, as stated in the main opinion, is contrary to the burden of proof and the concomitant rule of default prescribed by our Legislature in the parental-consent statute, § 26-21-4, Ala.Code 1975. See In re Anonymous, 888 So.2d 1265, 1267-68 (Murdock, J., concurring in the order of remand only). See also Bellotti v. Baird, 443 U.S. 622, 648, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) ("If, however, the court is not persuaded by the minor that she is mature or that the abortion would be in her best interests, it may decline to sanction the operation.").
Turning now to the reason for which I dissent, on remand the trial court made a decision as to the second or so-called "best-interests prong" of the two-pronged analysis contemplated by § 26-21-4(f). The trial court listed three "factors" upon which it based its decision. The first two of those factors repeat the trial court's conclusion as to the first prong of the two-pronged analysis contemplated by the foregoing Code section, i.e., whether the minor has the maturity and information necessary to make the abortion decision on her own. It is unclear what weight the trial court placed on those two factors as opposed to the third factor it cited. More to the point, it is unclear whether the trial court would have made the same decision as to the issue of the minor's best interests absent consideration of those first two factors. It is the responsibility of the trial court, not this court, to determine the minor's best interests. In my opinion, therefore, we have no alternative but to remand this case for the trial court to determine whether performance of an abortion would be in the minor's best interests without consideration of the first two factors upon which it has based its decision.
NOTES
[1] Such a default rule would be the opposite of that which has been established by the Legislature in §§ 26-21-1, 26-21-3, and 26-21-4.