869 So.2d 498 (2003)
In the MATTER of ANONYMOUS, a minor.
2020908.
Court of Civil Appeals of Alabama.
July 9, 2003.
*499 MURDOCK, Judge.
This case involves a petition by an unemancipated minor seeking a judicial waiver of parental consent for an abortion, pursuant to § 26-21-1 et seq., Ala.Code 1975. The minor, who will be 17 years old in less than 30 days, testified at the hearing on her petition that she was then nine weeks pregnant and that she had just completed her junior year in high school. The minor testified that she played softball as an extracurricular activity, that she was a "B" or "C" student, and that she planned to attend college and obtain a nursing degree. She testified that she had discussed the pregnancy and her alternatives with her boyfriend, who will be 17 years old in a few weeks and who is the father; with her boyfriend's mother; and with "the people" at the facility at which she planned to have the abortion. She also testified that her 21-year-old sister had given birth to a child out of wedlock when the sister was 19 years old, that her sister had been unable to care for that child, and that her parents had adopted that child. She stated that she did not think that her parents could care for another child, that *500 her parents would not allow her to have an abortion or allow her to place her child for adoption, and that her mother had physically abused her in the past.
Following a hearing on the minor's petition, the trial court entered a judgment denying the petition. The trial court found that the minor was approximately nine weeks pregnant. In the judgment, the trial court also stated:
"Child testified that she would kill herself if she were not allowed to have an abortion. That she is too selfish to care for another child, as she is one of the primary caretakers of her niece. The Court does not believe that [the] child has considered the emotional trauma that an abortion would have on her. After observing the child's demeanor this Court does not believe it to be in the child's best interest to have an abortion without further counseling and/or discussion with family members."
The judgment further stated, in preprinted language, that "the minor is not mature and well informed enough to make the abortion decision and the performance of the abortion is not in the best interest of the minor." The minor appeals.
In Ex parte Anonymous, 803 So.2d 542 (Ala.2001), our Supreme Court explained that the ore tenus rule applies in cases of this type and that,
"[i]n such a casewhere the trial court has had the opportunity to observe the witness and where assessments of the level of the minor's maturity are crucialthe trial court's findings should be afforded considerable deference. Here, the trial judge had the responsibility of determining the facts. In particular, it was the trial judge's responsibility to determine whether the petitioner is mature enough and well-informed enough about the abortion procedure to make an independent decision whether to undergo an abortion without parental consent. See § 26-21-4(f), Ala.Code 1975. In addition to hearing the testimony, the trial judge could observe the minor and could consider her demeanor as she testified. That aspect of the evidence is denied an appellate court by a cold record. The trial judge was in a far better position than are we to determine, as a matter of fact, the minor's maturity and level of knowledge."
803 So.2d at 546. See also Ex parte Anonymous, 812 So.2d 1234 (Ala.2001). The ore tenus rule also places responsibility on the trial court for determining the weight and credibility to be assigned to the testimony of witnesses. Thus, as the Supreme Court stated in Ex parte Anonymous, 803 So.2d 542, "`[t]he ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.'" 803 So.2d at 546 (quoting Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986)). We also note that "the burden of proof with respect to both the maturity/well-informed prong and the best-interest prong of § 26-21-4(f) lies with the minor." In re Anonymous, 833 So.2d 75, 78 (Ala.Civ.App.2002) (per curiam opinion, with two judges concurring and one judge concurring in the result). Based on the issue presented and the application of the ore tenus rule, we must affirm the trial court's judgment unless its factual findings are plainly erroneous or manifestly unjust. Ex parte Anonymous, 803 So.2d at 546.
The minor argues that the trial court's findings that she was not mature enough and not well-informed enough about the abortion decision were unsupported by the evidence. We first note, however, that during direct examination, the minor offered only a conclusory affirmation ("Yes ma'am") when questioned *501 about whether she was aware of the risks of having an abortion. She gave the same response when asked whether she was willing to assume those risks. The minor's counsel did not question her as to her knowledge or awareness of any specific physical, psychological, or emotional risks that might be associated with the abortion procedure, and the minor volunteered no explanations or details as to her understanding of those risks. When asked by the trial court what she had been told at the abortion clinic regarding the procedure itself, the minor stated that "[t]hey told me all about the dilation and the, you know, the anesthesia and stuff that I would go under. And the different plans I could choose."
The trial court also asked the minor whether anyone at the clinic had "go[ne] over anything about any thoughts you might have after the procedure is done." In response, the minor explained that she would be counseled by the abortion clinic prior to the abortion, after which there would be a 24-hour waiting period. When the trial court returned to this issue by asking whether the clinic had "go[ne] over... the normal feelings of a young lady when she has an abortion," the minor responded: "That, you know, you're always going to be telling yourself are you sure and, you knowyou know what's in your heart and you go with that because nobody else can tell you what you feel is right." When the trial court pressed the minor as to what "the clinic" had advised her regarding possible post-abortion emotional problems, the minor finally responded:
"A. Well, you know, they just kept telling me that it's your choice. You don't have to feel guilty about it if you feel that that's what you want to do then, you know, that's what you want to do. And you shouldn't let your parents or anybody influence the things that are going through your head. And if you truly think that's what needs to be done then you need to do it.
"Q. I'm not talking about ... them informing you of your choice. I'm talking about them informing you of what most ladies experience after they've had abortions as far as emotionally?
"A. Well, yes. They say, you know, most people don't look at babies the same way. Most people, you know, they always think, you know, what if. You have all these different kinds of thoughts going through your head."
When the trial court questioned the minor about whether she had thought about committing suicide, the following colloquy ensued:
"Q. Have you ever had any thoughts about harming yourself or committing suicide?
"A. Yes, sir.
"Q. When was that?
"A. If I couldn't get rid of the kid.
"Q. If what?
"A. If I couldn't get rid of the kid.
"Q. And why do you think you would harm yourself?
"A. Because I can't have it.
"Q. And how often do you have these thoughts?
"A. Just when, you know, I think about if I can't rid of it, I can't have an abortion or, you know, if I don't have a miscarriage or something, then that's the only choice.
"Q. So, you're telling this Court that if you can't have an abortion you would kill yourself?
"A. Yes, sir."
When the court later questioned the minor again regarding whether she would kill herself if she could not have an abortion, she stated:

*502 "A. Pretty much. That's my only other choice.
"Q. Do you think that is a mature decision to make?
"A. I mean, it's the only other choice I have. I can't have it. I'm not saying I want to kill myself. But I'm saying that I think it would literally drive me that crazy because right now my nieceyou know, the kid that my parents adopted is pretty much like mine. I mean, I have a car seat in my car for her. She's pretty much my daughter and everybody thinks it. I mean, it's already hard naturally as it is with her.
"I justI couldn't take a kid. I mean, I know that I'm notI couldn't raise it. I can't even support myself. My parents still support me. I know that, you know, I'm too selfish to support a kid or anything."
The minor argues on appeal that the trial court incorrectly concluded that she was not mature enough and well-informed enough about the abortion decision to make the decision on her own. However, the trial court was uniquely positioned to evaluate the minor's demeanor, upon which the trial court commented in its judgment. The trial court also made specific mention in its judgment of its concern that the minor had not adequately considered emotional-trauma issues relating to having an abortion. Based on those findings, and upon our review of the entirety of the minor's testimony, we must conclude that the trial court's finding that the minor is not mature enough and the trial court's finding that the minor is not well-informed enough to make the abortion decision are both supported by the record, and are not plainly erroneous or manifestly unjust.[1]
The minor also appears to argue that the trial court's finding as to the issue of the minor's "best interest" is not supported by the evidence. We begin our discussion of this issue by examining the minor's testimony regarding her relationship with her niece, including the following:
"A. My parents decided to take the kid.
"Q. Okay. So, did your parents legally adopt the baby?
"A. Yes, ma'am.
"Q. So, are they raising this baby as their own child?
"A. Yes, ma'am."
The minor also testified that the rearing of her sister's child by her parents was causing some financial difficulties for her parents. In its judgment, the trial court made reference to the minor's testimony, indicating that the minor had testified to the effect that, in the trial court's words, she was "one of the primary caretakers of her niece." As noted above, the minor's testimony in this regard includes the following:

*503 "I'm not saying I want to kill myself. But I'm saying that I think it would literally drive me that crazy because right now my nieceyou know, the kid that my parents adopted is pretty much like mine. I mean, I have a car seat in my car for her. She's pretty much my daughter and everybody thinks it."
As previously noted, the trial court's responsibility in an ore tenus proceeding of this nature is not only to make determinations regarding the maturity of the minor, but also to make credibility determinations regarding her testimony. In light of the minor's previous testimony regarding her parents' adoption of and assumption of responsibility for the daughter of the minor's sister, and in light of the trial court's opportunity to listen to and observe the minor during her testimony, the trial court could have decided to assign little weight, or credibility, to the minor's testimony regarding the primacy of her role in rearing her niece.
The minor also argues on appeal that "she did not have a good relationship with her parents. In fact, her mother had been verbally and physically abusive towards her." The minor testified that she was afraid to tell her parents about her pregnancy. The record, however, contains no evidence of specific reasons for such a fear as it relates to the minor's father.
With respect to her mother, the minor stated:
"[M]y mother freaks out about a lot of things and she has physically abused me... [for] no reasons really. Like one night I just came home and she was just going crazy and beating on me and my sister. I'm justI'm afraid to tell them because of the discipline that they wouldyou know."
The trial court later questioned the minor again regarding this matter:
"Q. You had mentioned that your parents had been previously abusive to you. Can you tell me exactly what happened?
"A. Just my mother. I mean, she would flip out about weird things. I mean, you don't really have to do anything to start it. You never know when it's coming. One day I came home at 12:00 like in the afternoon and my mom had told me to go to the mall. When I came home and she had just started getting mad about something saying that we never do anything to help out around the house. And that [my sister] gave her all these problems with the baby, having the baby and all this stuff. She feels that, you know, she had to take her on and all this, you know, gives her financial problems. So, she takes some shoe with her heel and hits me in the eye. I had a black eye for a week."
As previously noted, the trial court had the responsibility for assigning weight and making credibility determinations as to testimony of this nature. Given the trial court's findings regarding the immaturity of the minor, we cannot say that the trial court plainly erred in not assigning greater weight to her anecdotal descriptions of her mother's outbursts.
The record does contain testimony from the minor as to how her parents have responded to her sister's pregnancy and how the birth of her sister's child has affected their family. This court does not have the benefit, as did the trial court, however, of seeing and hearing the minor and, as indicated in the trial court's judgment, evaluating her demeanor. This court is therefore not in a position to assign weight or make credibility determinations as to the minor's testimony, as was the trial court.[2] It is apparent even from *504 the written record, however, that in many instances the testimony of the minor in this case was not clear. Further, while the minor did testify that she thought, based on her sister's experiences and her understanding of her parents' finances, that her parents would force her to keep the child and to drop out of high school and that she would not be able to attend college, the minor also testified that her parents had not actually made her sister rear her child, but that her parents had adopted the child and that the sister was already "back in college."[3]
Our Legislature has expressly stated that its purpose in adopting Alabama's parental-consent statute included "fostering the family structure and preserving it as a viable social unit," and "protecting the rights of parents to rear [their] children." § 26-21-1(a), Ala.Code 1975. The Legislature also noted that "parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child" and that "parents... may better insure that [their minor daughter] receives adequate medical attention." § 26-21-1(b), Ala.Code 1975. Accordingly, the Legislature concluded that "parental consultation is usually desirable and in the best interests of the minor." Id.[4]
As previously noted, the minor had the burden of proving that the relief she requested was in her best interest. The testimony of the minor in this particular case was, in many respects, relatively limited and often conclusory. Further, the trial court was uniquely positioned to evaluate the minor and her testimony, including her maturity, credibility, and the extent of her knowledge regarding the abortion procedure and its risks. Based on the record before us, we cannot say that the trial court's conclusion that the minor failed to satisfy her burden of proof was plainly erroneous or manifestly unjust.
AFFIRMED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
YATES, P.J., dissents.
*505 YATES, Presiding Judge, dissenting.
I dissent from the majority's affirmance in this case. The trial court entered a "Denial of Waiver of Consent Order" on a preprinted form provided for such denials. The trial court filled in the blanks regarding the minor's age and the length of her pregnancy. In a large blank space on the form (preceded by the phrase "The Court further finds that"), the trial court wrote:
"Child testified that she would kill herself if she were not allowed to have abortion. That she is too selfish to care for another child, as she is one of primary caretakers of her niece. The Court does not believe that child has considered the emotional trauma that an abortion would have on her. After observing child's demeanor this Court does not believe it to be in the child's best interest to have an abortion without further counseling and or discussion with family members."
Section 26-21-4(f), Ala.Code 1975, provides that parental consent shall be waived if the court finds either that the minor is mature enough and well-informed enough to make the abortion decision or that an abortion would be in the minor's best interest. Section 26-21-4(g) provides that the trial court must "issue written and specific findings and legal conclusions supporting its decision."
I recognize that pursuant to Ex parte Anonymous, 803 So.2d 542 (Ala.2001), the ore tenus rule now applies to a trial court's findings of fact in a waiver-of-parental-consent case; however, under the particular facts of this case, I believe that the trial court's judgment is plainly erroneous and manifestly unjust.
The minor, who will be 17 years old in less than 30 days, testified that her parents are opposed to abortion and that she was afraid of her parents' reaction to her pregnancy. Specifically, she testified that she has gone through the experience of her older sister's becoming pregnant and her parents' forcing her sister to keep the child and that, as a result, "everyone was miserable." Her parents would not let her sister put the child up for adoption. Her sister had to drop out of college while trying to care for the child. According to the minor, her sister would "just break down" and the parents subsequently adopted the child themselves. The minor testified that the child is now a toddler and that she spends a great deal of her time caring for this baby, even keeping a car seat in her car so that she can transport the child. The sister is moving out of the parents' home in two months, leaving the baby behind for the minor to continue to help rear. In discussing the financial problems her family faced after her parents had adopted her sister's child, the minor said that, on one occasion, her mother reacted to those financial problems by hitting the minor with the heel of her shoe, giving the minor a black eye. The minor also has a much younger brother that her parents are caring for.
The minor testified that, if she has the baby, she will have to drop out of high school. She testified that she had discussed the pregnancy with her boyfriend, who will be 17 years old in a few weeks, and his mother and that they supported her decision because, she stated, they believe the couple is too young to have a child. In response to the trial court's questioning, the minor testified that she is healthy, that she never drinks alcohol or uses illegal drugs, and that she participates in sports at her school. She stated that she discussed the abortion procedure with counselors at a clinic and that, if she had an abortion, her older sister would be going with her. She stated that she had waited 24 hours after the counseling session before seeking a waiver of parental *506 consent.[5] The minor testified that she feared her mother would physically abuse her if she had to tell her about the pregnancy. She stated that her mother had physically assaulted her and her sister in the past for no apparent reason.
It is clear from the record that the minor's parents have previously encountered an unplanned pregnancy, what their reaction was to that pregnancy, and how the decision not to abort the pregnancy has affected their family. "Whether a minor is mature and sufficiently well-informed is a difficult, yet delicate and important, decision that a trial court must necessarily make, not only in light of the testimony of the minor, but also in the context of the minor's demeanor, background, and sundry other circumstances." Ex parte Anonymous, 806 So.2d 1269, 1274 (Ala.2001). The minor testified that she already has the burden of caring for her sister's child and that she would have to drop out of high school and abandon her plans for college in order to care for a baby. She testified clearly as to the impact of forcing her to go through with the pregnancy.
"A: I mean, it's the only other choice I have. I can't have it. I'm not saying I want to kill myself. But I'm saying that I think it would literally drive me that crazy because right now my nieceyou know, the kid that my parents adopted is pretty much like mine. I mean, I have a car seat in my car for her. She's pretty much my daughter and everybody thinks it. I mean, it's already hard naturally as it is with her.
"I justI couldn't take a kid. I mean, I know that I'm notI couldn't raise it. I can't even support myself. My parents still support me. I know that, you know, I'm too selfish to support a kid or anything. I couldn't do it.
"[The Court]: That's why I was asking if you had considered other alternatives.
"A: I have. But if my parents knew that I was, then they would make me keep it. I would have no other choice."
The court concluded the hearing by stating, in part, "Whatever I do though you've got to think of two things. You've got to think of yourself and you still have to think of the baby."
"The `best interests of a child is a matter or question of ultimate fact reviewable under the clearly erroneous standard of review.' "Ex parte Anonymous, 806 So.2d at 1274, quoting In re Doe, 89 Haw. 477, 487, 974 P.2d 1067, 1077 (Ct.App.1999). The minor has experienced firsthand the impact of rearing a child born as a result of an unplanned pregnancy. She knows that her parents would force her to keep the baby. She does not have the option of carrying to term and then placing the baby for adoption. Given her testimony and the totality of the circumstances in this case, the record clearly reflects that it would be in the best interest of the minor to grant the waiver of parental consent.
NOTES
[1] Our Legislature has expressed its concern that there be "fully informed choices that take account of both immediate and long range consequences" and that "the medical, emotional and psychological consequences of abortion are serious and can be lasting." See § 26-21-1(b), Ala.Code 1975. See also Planned Parenthood v. Casey, 505 U.S. 833, 882, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (recognizing that "in attempting to ensure that a woman apprehend[s] the full consequences of her decision, the State furthers the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed"). The minor in this case failed to demonstrate a knowledge of any specific immediate or long-term physical, emotional, or psychological risks of having an abortion. Except for conclusory statements, the record contains relatively little evidence that the minor was aware of, appreciated, or had seriously considered such risks.
[2] In Ex parte Anonymous, 806 So.2d 1269, 1274 (Ala.2001), our Supreme Court noted that a trial court's findings concerning a minor's demeanor, i.e., her "composure, analytic ability, appearance, thoughtfulness, tone of voice, expressions, and her ability to articulate her reasoning and conclusions," were due the presumption of correctness afforded by the ore tenus rule.
[3] Even if we assume the trial court accepted the minor's testimony indicating that an adverse decision by the trial court would mean that the minor would be forced to give birth to the child, this does not automatically mean that a court-ordered waiver of parental consent must be considered as being in the minor's best interest. See Bellotti v. Baird, 443 U.S. 622, 642, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (noting that "[t]he circumstances in which this issue arises will vary widely" and that "an abortion may not be the best choice for the minor").
[4] See also Bellotti v. Baird, 443 U.S. 622, 648, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (noting that "[t]here is, however, an important state interest in encouraging a family rather than a judicial resolution of a minor's abortion decision. Also, as we have observed above, parents naturally take an interest in the welfare of their childrenan interest that is particularly strong where a normal family relationship exists and where the child is living with one or both parents. These factors properly may be taken into account by a court called upon to determine whether an abortion in fact is in a minor's best interests. If, all things considered, the court determines that an abortion is in the minor's best interests, she is entitled to court authorization without any parental involvement. On the other hand, the court may deny the abortion request of an immature minor in the absence of parental consultation if it concludes that her best interests would be served thereby, or the court may in such a case defer decision until there is parental consultation in which the court may participate.").
[5] The minor is apparently referring to § 26-23A-4, Ala.Code 1975, which provides that at least 24 hours before an abortion is performed, a woman must be provided certain information so as to give voluntary and informed consent to the abortion.