889 So.2d 525 (2003)
Ex parte ANONYMOUS.
(In re In the matter of Anonymous, a minor).
1030172.
Supreme Court of Alabama.
November 17, 2003.

On Submission of Findings
PER CURIAM.
This Court, by order of November 7, 2003, reversed the Court of Civil Appeals' judgment and remanded this matter for that court to "remand this cause to the trial court and order that court to detail sufficiently the basis for appropriate findings and immediately to conduct such further proceedings, to include taking additional testimony or admitting further evidence, that may be necessary in order to do so." Ex parte Anonymous, 889 So.2d 518, 519 (Ala.2003).
The burden of proof with respect to both the maturity/well-informed prong and the best-interest prong of § 26-21-4(f), Ala.Code 1975, lies with the minor. In re Anonymous, 833 So.2d 75, 78 (Ala.Civ.App.2002). After having reviewed the trial court's order entered on November 13, 2003, on remand, this Court concludes that the trial court's finding as to the maturity/well-informed prong is sufficiently supported by the record. This Court further concludes that the minor failed to carry her burden of proof as to the best-interest *526 prong, particularly in light of the absence of evidence as to the attitude or ability of the minor's father to assist her and as to whether an abortion is in her physical or emotional best interest.
AFFIRMED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE and WOODALL, JJ., dissent.
JOHNSTONE, Justice (dissenting).
I adhere to the views I expressed in my special writing on original submission. The order of the trial court on return to remand confirms my foreboding that the remand would be only an opportunity for makeweight justification for the original erroneous denial of relief to this minor. Some further observations are appropriate.
The main opinion has judicially created a rule that the minor bears the burden of proving her alternative grounds of relief. These grounds, established by § 26-21-4(f), Ala.Code 1975, are:
"(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or
"(2) That performance of the abortion would be in the best interest of the minor."
The burden of proof on the minor for the ground that "performance of the abortion would be in [her] best interest" is tantamount to a presumption that maintaining the pregnancy to term and bearing the baby is in the minor's best interest. This presumption is so contrary to fact that it constitutes a violation of due process of law.
The Legislature, in its sexual abstinence legislation, § 16-40A-1(a)(1), Ala.Code 1975, has found as fact that:
"Pregnancy and childbirth among unmarried adolescents, particularly young adolescents, often results in severe adverse health, social, and economic consequences, including: a higher percentage of pregnancy and childbirth complications; a higher incidence of low birth weight babies; a higher frequency of developmental disabilities; higher infant mortality and morbidity; a decreased likelihood of completing school; a greater likelihood that an adolescent marriage will end in divorce; and higher risks of unemployment and welfare dependency."
As Justice Woodall has already observed in his dissent on original submission, discussing abortion in the first trimester as this one would be, the United States Supreme Court stated in Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000):
"About 90% of all abortions performed in the United States take place during the first trimester of pregnancy, before 12 weeks of gestational age. Centers for Disease Control and Prevention, Abortion Surveillance  United States, 1996, p. 41 (July 30, 1999).... During the first trimester, the predominant abortion method is `vacuum aspiration,' which involves insertion of a vacuum tube (cannula) into the uterus to evacuate the contents. Such an abortion is typically performed on an outpatient basis under local anesthesia [Carhart v. Stenberg,] 11 F.Supp.2d [1099,] 1102 [(D.Neb.1998)]; Obstetrics: Normal & Problem Pregnancies 1253-1254 (S. Gabbe, J. Niebyl, & J. Simpson eds.3d ed.1996). Vacuum aspiration is considered particularly safe. The procedure's mortality rates for fist trimester abortion are, for example, 5 to 10 times lower than those associated with carrying the fetus to term. Complication *527 rates are also low. Id., at 1251; Lawson et al., Abortion Mortality, United States, 1972 through 1987, 171 Am. J. Obstet. Gynecol. 1365, 1368 (1994); M. Paul et al., A Clinicians Guide to Medical and Surgical Abortion 108-109 (1999).... As the fetus grows in size, however, the vacuum aspiration method becomes increasingly difficult to use. 11 F.Supp.2d at 1102-1103; Obstetrics: Normal & Problem Pregnancies, supra, at 1268."
530 U.S. at 923-24, 120 S.Ct. 2597 (emphasis added). Common sense as well militates against a presumption that maintaining a pregnancy to term and bearing a baby are in the best interest of a minor. The minor in this case is a victim of the burden of proof that is tantamount to this presumption.
The minor in this case is also a victim of prejudice against abortion demonstrable from the record. The trial judge gratuitously appointed a guardian ad litem for the fetus and, at the beginning of the minor's hearing, explained the appointment this way:
"You have had a lawyer appointed to represent you who is very experienced in these cases, and I have also, as has been my practice for five years now, appointed a lawyer to represent your unborn child, because I do not feel that the court should be placed in the position of being a cross-examiner, an advocate for one side or the other, so I've appointed someone to represent the silent voice in this case."
Gratuitously appointing a guardian ad litem for the "silent voice" casts the inquiry as a contest between a baby struggling to save its own life and the mother fighting to kill the baby. Thus, the trial judge opined, "unfortunately, the law allows this procedure...."
Notwithstanding the trial judge's stated rationale that he should not advocate or cross-examine, he cross-examined the minor on several occasions. One exchange went:
"The Court: Now your sister is fourteen?
"The Witness: Yes, sir.
"The Court: Does she know about your problem?
"The Witness: No, sir.
"The Court. And she's not much younger than you were when you got started. Are we going to have the same situation pop up with her in a couple of years or...."
The prejudice against abortion is further manifest in the trial judge's findings of fact upon return to remand. The findings of fact about the best interest of the minor are especially pertinent to this dissent:
"2. That the petitioner has not shown that the performance of an abortion would be in her best interest because of the following findings:
"A. That the petitioner has not shown a lack of viable alternatives available to her short of abortion either by delivering the child and rearing it in the home of her father or delivering the child and putting it up for adoption.
"B. That the petitioner has not made a thorough investigation into what risks are involved and what alternatives are available so as to make a determination as to what is in her best interest.
"C. That the petitioner has failed to prove to the Court what is in her best interest.
"D. That the petitioner has failed to show that abortion is the only alternative that would allow her to attain her goals of high school graduation, a college education, and a career as a forensic scientist.

*528 "E. That the petitioner has failed to prove to the court that an abortion is in her best interest."
Findings 2.C. and 2.E. merely repeat the proposition to be supported. Findings 2.A. and 2.C. utterly disregard the physical, psychological, and social changes, burdens, and pains of maintaining the pregnancy and bearing a baby. Rather, findings 2.A. and 2.C. bespeak the trial judge's own mind-set that the minor should maintain the pregnancy and bear the baby irrespective of those changes, burdens, and pains. Finding 2.B. is faulty for the same reason as well as another. The second reason finding 2.B. is faulty is that it is immaterial to the best-interest ground of relief and is material only to the alternative ground "that the minor is mature and well-informed enough to make the abortion decision on her own." The law entitles the minor to relief if an abortion is in her best interest irrespective of whether she is mature and well-informed enough to make the abortion decision on her own. Bellotti v. Baird, 443 U.S. 622, 643-44, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).
The same deficiencies in the trial judge's findings of fact that reveal a prejudice against abortion also foreclose the legal sufficiency of these findings of fact to support the judgment of the trial court. Thus, for the second time the trial court has failed to fulfill its fact-finding duty imposed by § 26-21-4(g), Ala.Code 1975, and Rule 2 of the Temporary Rules Governing Procedures for Petitions by an Unemancipated Minor Requesting Waiver of Parental Consent for the Performance of an Abortion.
The facts of record in support of the conclusion that an abortion is in this minor's best interest, the prejudice against abortion revealed by the record, and the legal insufficiency of the fact findings by the trial court all combine to render the judgment of the trial court manifestly unjust and clearly erroneous. Were the burden of proof for the best-interest ground of relief not unconstitutionally placed on the minor, the judgment of the trial court would be even more clearly erroneous. Thus, I respectfully submit that this Court should reverse the judgment of the trial court and render a judgment in favor of the minor.