905 So.2d 845 (2005)
In the Matter of ANONYMOUS, a minor.
2040267.
Court of Civil Appeals of Alabama.
January 5, 2005.
*846 YATES, Presiding Judge.
An unemancipated minor seeks review of the trial court's decision denying her petition for a waiver of parental consent to have an abortion. Initially, we note that as one of the "issues" raised in her brief on appeal, the minor has pointed out that the opinions by the appellate courts of this state concerning the review of a denial of a petition for a waiver of parental consent to have an abortion, although designated as appeals by "anonymous" parties, often include a great deal of potentially identifying information. In this opinion, we have attempted to set forth a thorough statement of the facts while referring only generally to certain facts that might serve to assist in the possible identification of the minor.
The record indicates that the minor is 17 years old and approximately 8 weeks pregnant. The minor testified that she would reach the age of 18 (at which time she would not need parental consent to have an abortion) shortly after she entered her second trimester of pregnancy. The minor testified that having the abortion procedure at that time could increase her risk of having complications from the procedure.
The minor has been in a relationship with her boyfriend, the father of her "unborn child," for several months. According to the minor, her pregnancy is the result of the first time she had sexual relations with this boyfriend; she testified that they used a condom but that the condom they used broke. The boyfriend is *847 19 years old and is employed. The minor testified that her boyfriend would support her decision either to have the child or to have the abortion procedure, and she testified that she had discussed the emotional impact of having the abortion procedure with her boyfriend's mother and sister. The minor testified that she did not want to inform her parents of her pregnancy because they would be disappointed in her and because, in the past, they had threatened to withhold financial support if she were to become pregnant.
The minor is an excellent student who has qualified for or obtained an athletic scholarship to college. The minor has aspirations to graduate college and to work in the medical profession. She testified that she would be unable to attend college if her parents withdrew their financial support, as, she says, they had threatened to do in the event she became pregnant.
The minor talked to her school nurse, a medical professional at a women's clinic, and another medical professional about her pregnancy. The school nurse and at least one of the two medical professionals stressed the alternative of adoption to the minor. The minor did not specifically explain why she rejected the possibility of placing the child for adoption; however, she did state that carrying the child to term would impact the availability of her athletic scholarship.
The minor's testimony before the trial court indicated that the minor was informed regarding the possible risks of the abortion procedure. The minor testified that she has friends who have become pregnant. At least one friend had an abortion when she was 17 years old, and, according to the minor, that friend experienced no negative repercussions from having had the abortion. The minor indicated that she had two other friends who had become pregnant and had kept their children. According to the minor, both of those friends had had a difficult time attempting to go to school and rear a child at the same time.
In its judgment denying the minor's petition for a waiver of parental consent, the trial court determined that the minor was not sufficiently mature to make the decision to have the abortion without her parents' consent and that the abortion would not be in the minor's best interests. The trial court made a number of factual findings in reaching those determinations.
The minor argues that the trial court erred in determining that she was not sufficiently mature to make the abortion decision and in determining that it was not in her best interests to have an abortion.
"The Parental Consent Statute, §§ 26-21-1 et seq., Ala.Code 1975, provides for a waiver of the requirement for a parent or guardian's consent to a minor's obtaining an abortion where the trial court finds either:
"`(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or
"`(2) That performance of the abortion would be in the best interest of the minor.'
"§ 26-21-4(f)[, Ala.Code 1975]."
Ex parte Anonymous, 812 So.2d 1234, 1237 (Ala.2001). The burden of proof with respect to both prongs of the above-quoted test is upon the minor who filed the petition seeking a waiver of parental consent. Ex parte Anonymous, 889 So.2d 525 (Ala.2003)(plurality opinion); see also In re Anonymous, 869 So.2d 498, 504 (Ala.Civ. App.2003) ("the minor had the burden of proving that the relief she requested was in her best interest").
The heightened deference given by an appellate court to a trial court's *848 findings of fact by the application of the ore tenus rule "does not amount to a conclusive presumption that the trial court's findings are correct." Ex parte Anonymous, 810 So.2d 786, 791 (Ala.2001)(plurality opinion). "The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses." Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). Although the ore tenus standard of review requires heightened deference to the trial court's findings of disputed facts, the ore tenus standard does not apply when the facts are undisputed.
The trial court's order states, "Where we have no testimony as to whether [the minor's] parents would allow the abortion, we cannot hold that having it without their consent ... is in her best interest. If her parents would allow the abortion, she does not need a judicial bypass." This is not the law. Section 26-21-4(f), Ala.Code 1975, provides that parental consent shall be waived if the court finds either that the minor is mature enough and well-informed enough to make the abortion decision or that an abortion would be in the minor's best interest. It is not the court's duty to second-guess whether the parents would allow the abortion. The purpose of the waiver is to allow a minor who meets the requirements of the statute to proceed with an abortion without telling her parents of her pregnancy. See Ex parte Anonymous, 810 So.2d at 795 (Lyons, J., concurring in the result)(in evaluating a minor's petition, the court cannot consider the minor's decision not to consult her parents).
In the present case, the trial court found that the minor was well-informed concerning the abortion process and its consequences. The order states, in part:
"The petitioner has counseled with her gynecologist (a doctor), with her school counselor, with the employees of [a women's clinic.] She can recite the mantra of possible consequences of an abortion. She has been made aware of the options to abortion. While this Court normally has required a petitioner to counsel with Sav-A-Life, or a similar pro-life organization, to do so in this case would be redundant. Her doctor and her school counselor have told her what Sav-A-Life would tell her. She has seen the ultrasound of her child. The Court is satisfied that she is well-informed."
However, the court found that the minor was not sufficiently mature (1) because she wants to play sports in order to earn a full scholarship to college (rather than give birth); (2) because she engaged in sexual intercourse "with her scholarship on the line" and with knowledge of her parents' threat of "cutting her off" financially if she became pregnant; (3) because she has no work experience; (4) because she has never before had to make a "serious decision"; (5) because, seeing the difficulties encountered by friends who have become pregnant, she got "herself into the same situation"; and (6) because the minor will reach the age of majority shortly before the end of her first trimester or shortly after she enters her second trimester, it is "not an act of maturity on her part to put the burden of the death of this child upon the conscience of the Court."
In regard to its finding that the minor is not sufficiently mature because she would rather participate in athletics in an attempt to maintain a scholarship than go through a pregnancy, the court states "that is not the only means by which she can obtain a college education even if her parents refuse to or are unable to pay for it." The court states that the minor's *849 grades and extracurricular activities are sufficient for her to obtain financial aid and that if she is a talented athlete, then missing seasonal athletics would not hinder a scholarship. The court stated "[The minor] has not thought through her options in a manner that a mature minor would do." First, the trial court makes presumptions that are not supported by the record, such as whether the minor would be eligible for financial aid. Second, the trial court found that her scholarship would not be in jeopardy even though this is in direct contrast to the minor's testimony.[1] Further, it is abundantly clear from the record that the minor has thoughtfully considered her options to achieve her goal of attending college.
The trial court determined that the minor was not sufficiently mature because, it says, a mature minor would not have engaged in sexual activities if she wanted to keep her scholarship or continue to be supported financially by her parents. This does not indicate that she lacks the maturity to make the decision to terminate a pregnancy. See Ex parte Anonymous, supra, 810 So.2d at 796 (Lyons, J., concurring in the result)(quoting from an Ohio case that noted "`that although the fact that appellant, an unemancipated minor, is pregnant indicates a certain level of immaturity, the legislature has envisioned that, notwithstanding this fact, she may be sufficiently mature to make the decision to terminate the pregnancy'").
The trial court determined that the minor was not sufficiently mature because she has not had any work experience. However, the record does not indicate that she has never had a job. Instead, the record indicates that the minor's parents currently pay for her financial needs. Additionally, the lack of work experience would not be indicative of immaturity where a minor is heavily involved in sports and extracurricular activities and maintains good grades.
The trial court also determined that the minor was not sufficiently mature because she had not made any "serious decisions" in her life. Our supreme court has stated:
"In every case where a minor female is involved, we would not find the experience to be expected of an adult female. Hence, the trial judge's preoccupation with the experience of this minor is misplaced; no minor female would be able to pass the experience test if adult-level experience were a criterion."
Ex parte Anonymous, 618 So.2d 722, 725 (Ala.1993) (overruled on other grounds, Ex parte Anonymous, 803 So.2d 542 (Ala. 2001)).
The trial court concluded that the minor was not sufficiently mature because she chose to engage in sexual intercourse in spite of seeing her friends who have become pregnant out of wedlock encounter hardships. The court stated, "[The minor] has a [friend] who has had an abortion with no apparent negative results (except to that child). She has two other friends who have borne children out of wedlock and are struggling to get by. Simply put, she wants out of the situation that she has created." Again, having sexual intercourse does not mean that the minor lacks the maturity to make the abortion decision. *850 Further, the minor did use a method of birth control in an attempt to prevent pregnancy.
Last, the trial court determined that the minor was not sufficiently mature because she could wait several weeks and have an abortion without the necessity of a judicial bypass and without burdening this particular trial judge's conscience with granting a waiver of parental consent.
In summary, none of the facts set out by the trial court support a finding that the minor was not sufficiently mature. The minor testified that she is almost 18 years old. She makes good grades and participates in extracurricular activities. She has plans to attend college and wants to have a career in the medical profession. The minor testified that the method of birth control that she and her boyfriend had chosen failed. Her boyfriend and his mother and sister support whatever decision she ultimately makes regarding her pregnancy. In direct contrast to the indicia of maturity the trial court relied on, the courts of this state have found academic performance, participation in extracurricular activities, plans for the future (including college), and understanding the procedures and consequences of an abortion to indicate maturity.
The trial judge in his order subjected the minor to demeaning and sarcastic remarks, as follows:
"[T]he legislature, in its infinite wisdom, has determined that an unborn child who never has had even the ability to do any wrong, could be put to death so that his mother can play [sports].
"Ah, but this young woman has more ambition than to play [sports]. Her possible... scholarship is but the means to the end of her becoming a [health-care provider]. But what is the duty of a [health-care provider]? To save lives. Should her child die so that, possibly, she might later save other lives?
"There may be physical complications to an abortion. There may be psychological complications or consequences. She said that she does not believe that abortion is wrong, so, apparently, in spite of her church attendance, there won't be spiritual consequences, at least for the present."
As an elected official, the trial judge has a duty to uphold the United States Constitution, the Alabama Constitution, and the laws of this state. In 1987, the Alabama Legislature enacted the Parental Consent Act, § 26-21-1 et seq., Ala.Code 1975, requiring the written consent of one parent or legal guardian before a minor may obtain an abortion. As required by Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), Alabama's Parental Consent Act also provides for a judicial-bypass procedure through which a minor may petition for a waiver of parental consent.
The judge states in his order, "This is a capital case. It involves the question whether [the minor's] unborn child should live or die." A review of the record and of the trial judge's comments lead us to question his objectivity in a judicial-bypass case. The record is replete with evidence that the minor in this case is mature and well-informed and that the abortion would be in her best interest. Our supreme court has stated:
"[I]t is not the [trial] court's responsibility to superimpose its judgment or its moral convictions on the minor in regard to what course of action she should take with reference to her own body. It is not a question of whether she is making a decision that we would approve of, but *851 whether she is making a mature decision or one in her best interest."
Ex parte Anonymous, 618 So.2d at 725.
Accordingly, we hold that the trial court was plainly and palpably wrong in determining that the minor was not sufficiently mature and that having an abortion would not be in her best interest. The other issues raised by the minor on appeal are pretermitted.
The judgment denying the waiver is reversed and the case is remanded. Because of the importance of time, the trial court is directed to enter a judgment granting the waiver, not later than 12:00 noon, January 6, 2005. If the trial court does not enter a judgment granting the waiver by that time, then effective at 12:01 p.m. on that date a judgment granting the statutory waiver is rendered by this court. See § 12-22-70, Ala.Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS OR REVERSED AND JUDGMENT RENDERED.
CRAWLEY, J., concurs.
MURDOCK, J., concurs in the result, with writing.
THOMPSON, J., dissents, with writing, which PITTMAN, J., joins.
MURDOCK, Judge, concurring in the result.
The trial court was called upon to decide whether, consistent with the requirements of Alabama's judicial-bypass statute, Ala. Code 1975, § 26-21-1 et seq., the minor should be allowed to have an abortion without first consulting with her parents and obtaining their consent. The trial court reached the conclusion that she should not.
Two questions are presented in cases such as this: (1) Is there sufficient evidence in the record that we may conclude that the trial court did not err to reversal in its factual findings? (2) Did the trial court apply the law correctly to its findings? Both of those questions must be asked in regard to each of the two prongs of inquiry prescribed in § 26-21-4(f), Ala. Code 1975. Based on my review of the trial court's judgment, I must answer the aforesaid questions, particularly the latter question, in the negative insofar as they relate to the issue of the minor's maturity. I would pretermit consideration of the other issues presented in this appeal.[2]
Unlike the trial-court orders in other recent judicial-bypass cases considered by this court, the trial court's order in the present case indicates that the trial court's conclusion as to the minor's lack of maturity was based not on the court's observations of the minor, or her demeanor, but rather upon a series of objective factors that the trial court clearly articulates in its order, and which this court is required to measure against the written record before us and against applicable law. Compare, e.g., In re Anonymous, 803 So.2d 529, 535-38 (Ala.Civ.App.2001) (Murdock, J., concurring specially); Ex parte Anonymous, 806 So.2d 1269 (Ala.2001); and Ex parte Anonymous, 810 So.2d 786 (Ala.2001) (plurality opinion). In laying a predicate for the first of several of these objective factors enumerated by the trial court in its order, the court posits that the minor could obtain sufficient financial aid to enable her to attend college, even if she was unable to earn an athletic scholarship. I find no evidence of this in the record. The *852 trial court then continues by stating that, if the minor is talented enough to earn an athletic scholarship at the present time, "she undoubtedly could do so after having had a child" and missing her senior season (or part of it) due to her pregnancy. I find no testimony or other evidence in the record to support the proposition that the amount of financial aid the minor might receive from an athletic scholarship would not be materially affected by the minor missing her senior season (or part of it) due to a pregnancy.
Even assuming for the sake of this discussion that the former proposition might be sustained on the basis of the doctrine of judicial notice, the foregoing propositions are included in the trial court's order as the predicate for the trial court's conclusion that the minor had "not thought through [these] options in the manner that a mature minor would do" and that therefore the minor was not sufficiently mature within the meaning of the statute. Regardless of the presence or absence of evidence as to the aforementioned propositions, the record before us contains no testimony as to whether the minor had or had not thought through the alternative financial aid/scholarship options to which the court is referring.
The second enumerated reason for the trial court's decision that the minor lacked sufficient maturity within the meaning of the statute was that, despite the risk of serious consequences in the event she became pregnant, the minor engaged in a sexual relationship. The court concluded that this was evidence indicating that the minor was not sufficiently mature to seek and obtain relief under the statute. However, a pregnancy, by its very nature, will be a life-altering experience. Being pregnant and giving birth to a child will impact a mother's educational and/or career plans, even if only temporarily, in virtually every case. Our Legislature clearly contemplated that this would be the case when it enacted the statute at issue in reaction to the United States Supreme Court's decision in Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), requiring that states afford minor females a mechanism through which they may obtain an abortion without the consent of their parents. As a judge, regardless of my personal view as to the wisdom or soundness of a statute generally, or the specific manner in which the statute is "constructed," the fact that our Legislature has chosen to adopt the statute as our law means that I am bound by my oath of office to apply that statute, except to the extent that it may be unconstitutional. Likewise, I am bound by the precedent of our Supreme Court. With respect to both of these strictures, I note that our Supreme Court has held that the judicial-bypass statute may not be applied in a way that would "run afoul of the basic rule of statutory construction that the courts must interpret and apply statutes so as to give them effect." Ex parte Anonymous, 810 So.2d at 793. Because it will virtually always be the case that a pregnancy will have a significant life-altering impact on a minor, the trial court's stated rationale would leave the statute with essentially no field of operation.
The trial court also states in its order that "[t]his is a capital case." Further, the court asks rhetorically whether it is "an act of maturity on [the minor's] part to put the burden of the death of this child upon the conscience of the court?" The Legislature has prescribed a statutory scheme that treats judicial-bypass cases as other than capital cases, however. Moreover, use of the foregoing rhetorical question as a rule of decision in every case would deprive the statute of any field of operation.
*853 As I am sure is true of the esteemed trial judge, and of the other judges of this court, I have not reached my decision in this case lightly. As noted, however, if I am to fulfill my oath as a judge, I have no alternative but to apply, to the extent they are constitutional, the legal standards prescribed by the legislative branch of government. For this reason, and because I am bound by the previous decisions of our Supreme Court as well, I am required to concur in the result reached by the main opinion. See Ex parte Anonymous, 810 So.2d 786.
THOMPSON, Judge, dissenting.
I must respectfully dissent from the main opinion. See Ex parte Anonymous, 889 So.2d 525 (Ala.2003)(plurality opinion); Ex parte Anonymous, 812 So.2d 1234 (Ala. 2001); Ex parte Anonymous, 806 So.2d 1269, 1279 (Ala.2001); Ex parte Anonymous, 803 So.2d 542 (Ala.2001); and In re Anonymous, 833 So.2d 75, 81-82 (Ala.Civ. App.2002).
PITTMAN, J., concurs.
NOTES
[1] The trial court implicitly found the minor to be credible because the trial court's order does not reference the minor's demeanor and the court concluded that the minor was well-informed. See Ex parte Anonymous, 810 So.2d at 793 (the trial court's order failed to reference the minor's demeanor in determining credibility and maturity; therefore, the record "supports the inference that the trial court found [the minor] to be credible"). Accordingly, there is no identifiable basis for disregarding the minor's testimony where the import of the judgment is that the trial court found the minor to be credible.
[2] I do not join in the main opinion's discussion or characterization of a number of matters not dealt with in this writing.